STELLA B. LEONARD, FORMERLY KNOWN AS STELLA B. LEONARD BELANGER, PLAINTIFF AND RESPONDENT, v. DAVID J. BELANGER, H. M. CHILDERS AND VINCENT VRENON, INDIVIDUALLY AND DOING BUSINESS UNDER THE NAME AND STYLE OF MODERN DAIRY, DEFENDANTS AND APPELLANTS.

No. 3603

September 11, 1950.                    222 P.2d 193.

578

*Royal A. Stewart,* of Reno, for Appellants.

*John S. Sinai,* of Reno, and *Andrew L. Haight,* of Fallon, for Respondent.

*Morley Griswold* and *George L. Vargas,* both of Reno, amici curiae.

## OPINION

By the Court, BADT, J.:

Respondent Stella B. Leonard, formerly known as Stella B. Leonard Belanger, recovered a judgment against David J. Belanger, H. M. Childers and Vincent Vrenon for the return of forty-one milk cows and two bulls and for an accounting of the proceeds of sales of milk and sales of calves from said cows during the period of the defendants' alleged unlawful possession of them, and for her costs. Childers and Vrenon appealed from the judgment and from the order denying their motion for new trial, and respondent has moved to dismiss their appeal upon the general ground, hereinafter more specifically discussed, that they have no present interest in the subject matter of the judgment, that they are accordingly not aggrieved parties, that they have specifically disclaimed any interest or claim of ownership or right to possession of the cattle in controversy and that any controversy over the ownership of the cattle has become moot so far as they are concerned. It will be necessary to trace the ramifications of the various phases of the litigation that have involved these parties and the livestock in question up to the present point. It will avoid confusion if we refer to the parties by name.

On June 25, 1948, Stella B. Leonard, then Stella B. Leonard Belanger, commenced a divorce action against David J. Belanger, which also involved the issue of the

ownership of forty-one head of dairy cows and two bulls, besides other personal property and real estate. The decree of divorce, entered in favor of Mrs. Leonard on September 14, 1948, in said action decreed that said livestock were her sole and separate property at the time of the marriage, and continued to be so. During the pendency of the divorce action on July 31, 1948, David J. Belanger, the defendant, sold or attempted to sell the forty-one milk cows and two bulls to Childers, and on September 10, 1948, Childers sold or attempted to sell said cattle to Vrenon, then doing business as Modern Dairy. Mrs. Leonard did not consent to and had no knowledge of these transactions. As noted, she was by the divorce decree adjudged the owner of the livestock. By reason of the sales and deliveries above mentioned, it became necessary for her to sue Belanger, Childers and Vrenon to recover them. Belanger (who had defaulted in the divorce action by failing to answer after the overruling of his demurrer) likewise defaulted in the action brought against him, Childers and Vrenon for the recovery of the cattle. As a matter of fact, upon selling the cattle to Childers he immediately pocketed the money in cash and absconded, and has apparently not since been heard from. On the day the divorce action was called up for trial Belanger's attorney, George L. Vargas, Esq., one of amici curiae, was permitted by the divorce court to withdraw as defendant's attorney.

The action against Belanger, Childers and Vrenon was commenced November 4, 1948, and was tried October 19, 1949. Honorable Clark J. Guild presided in the divorce action, and Honorable Merwyn H. Brown presided in the second action. In the latter, the court made findings to the effect that neither Childers nor Vrenon was a bona fide purchaser without notice and that neither obtained any title to the cattle by reason of the purported sales. The conclusions of law and judgment based on these findings followed in due course and ordered, adjudged and decreed that Vrenon return the cattle to Childers and that Childers return them to Mrs. Leonard.

No alternative judgment was sought or rendered. The cattle are referred to as the identical forty-one cows and two bulls involved in the divorce action.

This judgment was immediately, on October 21, 1949, docketed in the office of the clerk of the district court and execution issued thereunder, commanding the sheriff of Churchill County to deliver the possession of said cattle to plaintiff. The sheriff served the execution on Vrenon, who advised that the cattle were located on the ranch premises of Milton A. Bowler and Milton D. Bowler in said county, and led the sheriff to such Bowler ranch by preceding the sheriff's car in Vrenon's own car. The sheriff found the cattle on the Bowler premises and, with the exception of one of the bulls which apparently had died, removed the cattle and placed them in possession of Mrs. Leonard, and filed his return.

The Bowlers filed a statutory third-party claim, alleging that they were the owners and entitled to the possession of the cattle and demanding their return. No proceedings were had as provided by the third-party claim statute to determine ownership or right of possession, nor did the sheriff exact from Mrs. Leonard a bond against the Bowlers' third-party claim.

The Bowlers then sought a writ of mandamus from the district court commanding the sheriff to return the cattle to them, but after a hearing the writ was denied and the proceedings dismissed. The Bowlers then filed their petition with this court for a similar writ of mandamus.[1] In the course of the hearing of such petition

[1] Messrs. Griswold and Vargas, originally attorneys for Belanger in the divorce proceedings, and attorney for the Bowlers in the mandamus proceeding in the district court, and attorneys for the Bowlers in the mandamus proceeding in this court, and attorneys for the Bowlers in the proceedings supplementary to execution in the district court hereinafter discussed, and attorneys for the witness Ronnow in such supplementary proceedings, were by ex parte order of this court permitted to appear in this proceeding as amici curiae. Respondent, with much justification, asserts that under the circumstances the order permitting the appearance of amici curiae was an inadvertence, but in view of the conclusions reached in this opinion it becomes unnecessary to discuss the point.

for the writ of mandate there was placed before us the record of the evidence and proceedings as had before the district court, Honorable Clark J. Guild presiding, at the hearing of the petition for mandamus in that court.

We granted the writ of mandamus, Bowler v. Vannoy, etc., 67 Nev. 80, 215 P.2d 248, and explained briefly in denying a petition for rehearing, Bowler v. Vannoy, 67 Nev. 113, 216 P.2d 274, the reason therefor. We there said: "Respondent sheriff, armed with a writ against Vrenon, ordering respondent to deliver certain livestock to Mrs. Leonard, found the cattle in the possession of the Bowlers, who were not parties to the writ or to the action, and who *claimed* title and right of possession. It was the sheriff's clear mandatory duty, in the absence of any process directed against the Bowlers, in the first place to respect their claim of title and claim of right to possession, and in the second place to honor their third party claim in default of Mrs. Leonard's bonding against it and in the absence of proceedings under the third party claim statute."

Our original opinion in the mandamus proceeding was filed February 10, 1950, and our order denying rehearing on March 27, 1950. It now appears that on February 14, 1950, Mrs. Leonard initiated proceedings supplementary to execution in the district court and in aid of the judgment and execution against Childers and Vrenon, which came on for hearing on April 29, 1950, and in which Childers, Vrenon, Milton D. Bowler, Milton A. Bowler, and one J. Price Ronnow (who apparently acted as an agent for the person lending the Bowlers part of the purchase price of the cattle in question) were called and examined as witnesses. At this hearing the Bowlers were represented by Messrs. Griswold and Vargas, and Childers and Vrenon were represented by Mr. Royal A. Stewart, who had not appeared in the district court trial against them but who represents them in the present proceeding. We have before us, as part of the record

urged in support of the motion to dismiss the appeal, the transcript of the supplementary proceedings in the district court. The learned district judge early in those proceedings made it clear that he recognized the rule that he could not attempt therein to adjudicate title and that if it appeared that the Bowlers asserted title to the cattle that were the subject of the judgment and execution in Mrs. Leonard's suit against Childers and Vrenon, he could do no more than authorize Mrs. Leonard to commence an appropriate action against them.

In these proceedings not only did Milton D. Bowler and Milton A. Bowler both testify positively to their purchase of the cattle from Vrenon and the date and circumstances and delivery and payment and other matters in connection therewith, and to their continued possession and ownership following such purchase (except for the few days when they were in the possession of Mrs. Leonard after the sheriff's seizure under the writ of execution), but their counsel now, appearing as amici curiae, vigorously supporting the position of Childers and Vrenon, constantly and repeatedly made clear to the court his position that Childers and Vrenon had parted with their ownership and that the Bowlers were the owners. Childers also in the same proceeding executed an affidavit denying that he refused to comply with the judgment for the return of the cattle, alleging that in purchasing the cattle from Belanger he acted only as a buyer for Valley Livestock Company by whom he was employed, and that the cattle had been transferred to Vrenon long before said action had been commenced, and that it was beyond his power to return any cattle to the plaintiff or any other person.[2] In his opening brief on the merits in this appeal he attacks the court's finding that he had

[2]The briefs and the record deal voluminously with the question as to whether Childers or Valley Livestock Co. was Belanger's grantee and Vrenon's grantor. The court's finding that Belanger's sale was to Childers and that the sale to Vrenon was from Childers, is amply supported by the evidence, and we find it unnecessary to discuss this phase of the case further.

ever purchased the cattle. Similarly in the supplementary proceedings Vrenon denied that he had contemptuously or otherwise refused to comply with the judgment and execution for the return of the cattle and alleged that on the contrary it was beyond his power to comply and that he had transferred the cattle prior to the commencement of the action. He further testified that from the time of the sale of the cattle to the Bowlers he claimed no further interest in them. Other places in the record amply support the conclusion that Childers, Vrenon and the Bowlers, and their counsel have at all times since the rendition of the judgment from which this appeal is taken, insisted that neither Childers nor Vrenon has any interest in such cattle.

Appellants lay particular stress upon the fact that the consistent disclaimers of Childers and Vrenon of any interest in the cattle are to be taken as conditional only. They refer to the question asked Vrenon in the supplementary proceedings, "Is it your contention at the present time that you have no interest whatsoever in the cattle?" and to his answer, "No. So far as interest in the cattle, as long as they are obligated and they pay me the obligation, I have none." In like manner they refer to Vrenon's testimony that he claimed no interest in the cattle so long as he was paid the balance of his money. They assert that the evidence shows not only that there is a balance due Vrenon of $7,000 from the Bowlers as the balance of the purchase price of the cattle, but a possible liability on his part to repay some $3,000 paid by the Bowlers. There is also some testimony, it is claimed, indicating that the $7,000 is on deposit on escrow to be paid to Vrenon when and if the litigation is terminated and the Belanger-Childers-Vrenon-Bowler title is held to be clear. All this is asserted as substantiating the view that Childers and Vrenon are aggrieved parties entitled to appeal. The position of Vrenon would, according to his counsel, make his status substantially that of one who had sold upon a conditional contract or a title retaining contract of sale

or who had taken a purchase money mortgage. The evidence however does not disclose such a situation. The Bowlers simply owed Vrenon money. Such indebtedness was not only for the balance of the purchase price on these cattle but, according to Vrenon himself, the Bowlers owed him other money—money for hay supplied by Vrenon and money for another bunch of cattle that Vrenon had helped him purchase. Thus he stated: "If the balance is not paid me I have a claim against the cattle so to speak. Q. Against the cattle or against money? A. Against anything he has got,—wouldn't I?" In other words if Bowler was indebted to Vrenon, Vrenon could obtain judgment against Bowler and satisfy the same by levying upon any of Bowler's non-exempt property, including these cattle. Even such indebtedness may be questionable. Vrenon testified that Bowler was to pay for the cattle out of the milk checks. These were substantial, amounting approximately to $800 a month and being not only for milk produced by these cows but by Bowler's other cows. At the time of the supplementary proceedings in February, 1950 this had already amounted, according to Vrenon's ledger sheets produced in court, to over $6,000, and a matter of arithmetic would indicate that the whole balance is probably now paid. There is at least nothing to indicate the contrary. Vrenon also insists that the record shows that he gave a warranty bill of sale to Bowler, but outside of one statement volunteered by the witness Ronnow, it cannot be said that any proof of a warranty is in evidence. Boone v. Ledbetter, Mo.App., 200 S.W.2d 601; Raymen v. Galvin, Mo.Sup., 229 S.W. 747. Vrenon produced in court a bill of sale which was exhibited to the trial judge, and counsel for Mrs. Leonard attempted to introduce it in evidence. Some fifteen or twenty pages of the record are devoted to objections and arguments on the admissibility of this instrument, which finally resulted in the success of Vrenon in keeping it out of the record. Further doubt is cast on any liability of Vrenon to Bowler on the suggested warranty of title, by Vrenon's

repeated statements during the supplementary proceedings that he "bought the cows for Mr. Bowler"; that he "put up the money to buy the cows for him"; that his agreement with Bowler was that he "bought the cattle for him and he was to pay me (Vrenon) back out of the milk check." Vrenon, further pressed for an explanation of the transaction between him and Bowler, whether by way of escrow instructions, agreement or otherwise stated: "It was just based on the agreement that we needed more milk and I helped him buy the cattle like I had other bunches for more milk production, and he was to reimburse me for the cattle out of his milk check." It also developed that this payment or credit for the proceeds of milk deliveries included milk from all of Bowler's cows, apparently including the "other bunches" that Vrenon had helped him to buy.

The writer of this opinion concurred reluctantly in the order granting the writ of mandamus against the sheriff and ordering the sheriff to return to the Bowlers the cattle taken from them under the judgment and execution against Vrenon and Childers. Bowler v. Vannoy, 67 Nev. 80, 215 P.2d 248, 264. The grounds of such reluctance were there stated, the fourth ground being "because our opinion and judgment in this proceeding can determine nothing as to the conflicting claims of the parties and because such conflicting claims have not yet been determined." No one in connection with any of these proceedings has claimed at any time that title or right to possession could be determined either in the proceedings supplementary to execution or in the mandamus proceeding had in this court. Mrs. Leonard first sought to establish her title to the cattle in her divorce action against her husband. Her title was there so determined, but relief under the judgment could not be obtained by reason of his attempted sale and his delivery of the cattle to Childers and the subsequent delivery of the cattle by Childers to Vrenon. She thereupon commenced the action against the latter two and obtained a judgment for the return of these cattle. In that action

it is important to note that plaintiff's complaint alleged that Belanger on July 31, 1948, without the knowledge or consent or authorization of plaintiff, sold and executed a bill of sale for the forty-one head of cows and two bulls, the property of Stella B. Leonard Belanger, to Childers, who purchased the same with actual knowledge of the divorce action. Childers' answer admitted his negotiations for the purchase of the cattle from Belanger, but alleged that the bill of sale went through Valley Livestock Co. He also admitted plaintiff's allegation of her demand for the return of said cows and bulls "now in the possession of Vincent Vrenon," and his refusal to surrender the same. Vrenon likewise in his answer admitted that he was "in possession of 41 head of milch cows and 2 bulls."

Their testimony at the trial was to like effect and at the time of the trial of the action proper the cattle were still on Vrenon's ranch, and his counsel were familiar with that situation.

The foregoing situation is detailed because of the present insistence of appellants and amici curiae that if appellants have no present interest entitling them to appeal, they likewise had no interest which justified the plaintiff in making them defendants in the action, and that if plaintiff thus made them defendants, she is in no position now to assert that they have not sufficient interest to entitle them to appeal from an adverse judgment. The situation however thus relied on by appellants is one not chargeable to respondent, as is abundantly clear not only from the matter above recited but from other parts of the record.[3]

---

[3]The record takes us still further back. In the Belanger divorce action, Mrs. Belanger had obtained a restraining order restraining Belanger from selling or encumbering the cattle or taking any of the proceeds of milk sales. Belanger, through his attorneys, who are amici curiae herein, moved to vacate this order, *on the ground that Belanger and Mrs. Belanger each owned an undivided half interest in the cattle*, that Belanger did not intend to and did not contemplate selling any of the cattle, but desired permission to use the proceeds of the milk sales so as to be able to carry on the business for the benefit of both parties. Thereafter a stipulation

The brief of amici curiae is devoted mainly to the contention that if the appeal is moot now, it was so when respondent filed her suit. Under the issues made by defendants' pleadings and under the position taken by them at the trial, we cannot agree with appellants' contention, repeated again and again, and reiterated by amici curiae, that if appellants by reason of their having disposed of all interests in the subject matter of the suit are precluded from a right of appeal, respondent by the same token had sued the wrong defendants in the trial court and that the judgment should accordingly be reversed without more ado. Both appellants, prior to the commencement of the action, and in their pleadings, and at the trial asserted, at the very least, possession and right of possession in Vrenon. Neither of them disclaimed at any time. The record does not disclose that appellants ever advanced to the court the theory that they should be dismissed from the case because they had disposed of their interests in the cattle before the commencement of the action or disclaimed interest therein, or that they took such position in their motions for new trial or their objections to plaintiff's proposed findings or in their own proposed findings. They were of course not parties to Bowler's subsequent mandamus against

was entered into between counsel, providing for the vacating of the restraining order, the continued sale of milk to the Crescent Creamery Company of Reno, the deposit of the proceeds to the joint account of the parties (subject to the payment by the creamery direct to Mrs. Belanger of $50 a week and the further sum of $91 a month for payments on her car) and the continued operation of the business for the benefit of both. These stipulations were approved by the trial court in the divorce action July 15, 1948 and the original restraining order vacated. Belanger's sale, or attempted sale of the cattle to Childers, and his absconding with the proceeds in cash followed on July 31, 1948, at approximately 12 o'clock noon on a Saturday, under circumstances which the trial court held, in the subsequent action against Childers and Vrenon, charged Childers with knowledge and notice. It should be noted, however, in fairness to amici curiae, that when obtaining from this court the preliminary writ of mandamus in Bowler v. Vannoy, they frankly advised of their former representation of Belanger in the divorce action until their withdrawal therefrom on September 14, 1948.

the sheriff in this court. In the supplementary proceedings in the district court, after both mandamus proceedings and during the pendency of this appeal, they for the first time asserted their immunity from any liability or responsibility for satisfying the judgment and execution for the delivery of the cattle to Mrs. Leonard, on the ground that they had parted with all title, right of possession, possession, or interest of any kind. That the facts behind such tardy disclaimers dated their transfers of title and possession as of a time prior to the commencement of the action, can hardly avail them, under the circumstances, as a defense against the clear showing that they have no such interest in the subject matter of the action as to entitle them to prosecute their appeal.

This conclusion is strengthened by appellants' own analysis of their pleadings in the district court: "The separate answer of the defendant Childers puts in issue the material allegations of respondent's complaint * * * and sets up a purchase in good faith. * * * The defendant Vrenon by separate answer denied * * * the material allegations of the respondent's complaint and alleged purchase * * * without notice of the plaintiff's claim. * * *"

The following chronology of the proceeding becomes important, bearing in mind that Bowler testified that three or four or five months after the first part of August, 1948, he learned that Mrs. Leonard "was suing Childers for the cows"—the same cows that Bowler had in his possession.

June 25, 1948—Complaint for divorce, Belanger v. Belanger.

July 31, 1948—Sale, Belanger to Childers (Saturday noon).

August 4 (?), 1948—Sale, Childers to Vrenon.

August ? 1948—Sale, Vrenon to Bowler.

September 10, 1948—Bill of sale, Childers to Vrenon.

November 4, 1948—Complaint, Mrs. Leonard v. Belanger, Childers and Vrenon.

October 1, 1948—Bill of sale, Vrenon to Bowler.

October 19, 1949 — Judgment against Childers and Vrenon for delivery of cattle to Mrs. Leonard.

October 21, 1949—Execution. Cattle taken from possession of Bowlers.

October 25, 1949—Bowler third-party claim filed with sheriff.

November 30, 1949—Childers and Vrenon notice of appeal served.

December 8, 1949—Petition for mandamus. Bowler v. Vannoy, sheriff.

December 22, 1949—Petition for mandamus argued.

January 3, 1950—Petition for mandamus submitted.

February 10, 1950—Opinion filed granting mandamus. 67 Nev. 80, 215 P.2d 248.

April 21, 1950—Childers and Vrenon opening brief on appeal on merits filed.

April 29, 1950—Proceedings supplementary to execution. Vrenon for first time disclaims title.

June 2, 1950—Mrs. Leonard's notice of motion to dismiss appeal filed.

June 28, 1950—Same argued and submitted.

While it is true that the consideration of this motion to dismiss the appeal does not involve any determination of the actual ownership of the cattle and while such determination was not involved in the mandamus proceeding, it is significant that the chief justice's analysis of the facts in his opinion in that proceeding, Bowler v. Vannoy, 67 Nev. 80, 215 P.2d 248, was to the effect that, at least to the extent of twenty-six cows and two bulls, Bowler had purchased the same from Vrenon in the beginning of August, 1948, at which time Vrenon had placed in escrow a written bill of sale; that Vrenon did not receive a bill of sale from Childers till September 10, 1948, but that this was "most likely" pursuant to a prior written or oral agreement between Childers and Vrenon; that Vrenon's testimony claiming ownership of the cattle because they had not been paid for by Bowler was merely his own conception of the transaction; and that

the circumstances outlined would not have prevented the passing of an equitable title to Bowler and that the situation might, as between Bowler and Vrenon, have to be determined by future litigation between them. The analysis of the facts was to the further effect that at the time of the levy of execution "the Bowlers upon their ranch in said premises were in actual possession of such dairy cattle, with the right of possession, and claim of ownership thereof."

Appellants place strong reliance on Doyle v. Hays Land & Investment Co., 80 Kan. 209, 102 P. 496, 501, 133 Am.St.Rep. 199. Doyle, named as a defendant as claiming an interest in property sought to be foreclosed, offered proof of his claim. After he had rested the plaintiff offered in evidence a deed, recorded after the commencement of the action, showing that Doyle had conveyed his interest. The decree went against Doyle and he appealed. On motion to dismiss the appeal the court said: "Hence the defendant Doyle was a proper party, and, if he and his grantee were content to have it proceed to judgment against him, it is not perceived why the plaintiff should complain." (The Kansas statute, quoted by the court, is similar to our own, providing that, upon the transfer of an interest during the pendency of an action, it may be continued in the name of the original party, or the court may allow substitution to be made.) No authority is cited for the court's ruling, and no reason given other than the one so casually stated. It may be correct in some cases but not necessarily in all cases. More logical is the rule stated in 88 A.L.R. 1159, quoted with approval by this court in Kenney v. Hickey, 60 Nev. 187, 105 P.2d 192: "The mere fact that a party could properly arouse the jurisdiction of the court below does not establish his right to appeal from an adverse decision." But a more logical analysis of Doyle v. Hays appears in Brunson v. Lightfoot, 87 Okl. 202, 209 P. 922, 924. Brunson had disclaimed in his answer to a complaint seeking cancellation of a deed and to quiet title in plaintiff, and the court rendered

judgment against Brunson on the pleadings. On appeal Brunson relied upon Doyle v. Hays, claiming that he was in the same position as Doyle when Doyle's conveyance divested him of title. The Oklahoma court said: "The plaintiff, Hays Land & Investment Company, offered in evidence a deed executed by Doyle, and claimed Doyle was divested of title. It moved to dismiss Doyle's appeal because, as they assert, the deed offered in evidence by them divested Doyle of title, and he therefore could not maintain the appeal. Doyle did not disclaim title; neither did he admit that he had no title, but continued to assert that he was the owner of the property, and this was the question he was seeking to review in the Supreme Court by his appeal." Thus Doyle v. Hays does not support the position of Childers and Vrenon, who disclaim title.

In Gibbons v. Cannaven, 393 Ill. 376, 66 N.E.2d 370, 377, 169 A.L.R. 1190, a statutory action against an operator of a night club for damages for selling intoxicating liquor to a person who, by reason of such intoxication, assaulted plaintiff, the owner and lessor of the property sought to intervene and to appeal from the judgment. He claimed to be aggrieved by the judgment because the statute permitted the judgment to be a lien upon the property, enforceable by sale thereof. While much of the case deals with the statute itself and the determination that it did not violate any constitutional guarantees, it is the strongest direct answer coming to our attention, to the assertion that by the judgment in the instant case Childers becomes liable upon his statutory implied warranty of title to Vrenon and Vrenon becomes liable on his asserted written warranty of title to Bowler and that Vrenon will also lose the $7,000 balance "held in escrow" out of the money advanced by Ronnow's clients for the purchase of the cattle by the Bowlers—the payment of such money being subject to various other commitments through the Sparks branch of the First National Bank of Nevada and through the Fallon branch of the same bank. The Illinois Supreme Court said:

"[A]ppellants have no interest in the judgment against Cannaven. Their rights are not affected by the suit in which the judgment was entered. While it is true that the judgment may be made the basis for a suit to subject the property in which the liquor was sold to the payment of the judgment, the rights and interests of appellants will only be affected by the suit to enforce the judgment against the property." The court further said: "The liability, if any, against [appellants'] property, can and will accrue only under the decree in the subsequent suit brought to enforce the lien, if and when that decree is entered." The effect of this opinion is the stronger because, under the statute, there was not even a doubt that the judgment for damages in the first suit would be binding and conclusive in the second suit. Many cases are there reviewed as to the interest of a party in the subject matter to entitle him to appeal. "His interest must be such as to show that he takes or loses something directly by the judgment or decree which he challenges. * * * [H]e must show a direct interest in the subject matter of the litigation, which interest was prejudiced or aggrieved by the judgment sought to be reviewed. * * * It is essential that it appear, either from the record or the assignment of errors, that they were injured by the judgment, or will be directly benefitted by its reversal, or that they are competent to release errors."

It is true that in Lane v. Ferre, 147 La. 796, 86 So. 186, 187, the court said: "Moreover, as it appears from the deed annexed to the motion to dismiss that plaintiff sold the property with warranty of title, he has an appealable interest." However, no reason is stated for so holding, and the only authority referred to is Simon v. Richard, 42 La.Ann. 842, 8 So. 629. The facts in the latter case are complicated and difficult and the opinion itself is not entirely clear, but we are unable to draw from it the rule enunciated.

Likewise in State ex rel. Race v. Cranney, 30 Wash. 594, 71 P. 50, the court said: "If a party has sufficient

interest to make him a party to an action, he has sufficient interest to appeal should the judgment be against him." But as in Lane v. Ferre, supra, no reason is given and no authorities are cited. Such statements may indeed be in order where the circumstances justify the application of the doctrine of estoppel, but no such circumstances appear here.

■ The rule of law upon which respondent relies is thus stated in 4 C.J.S., Appeal and Error, sec. 180, p. 352: "Parties who disclaim any interest in the subject matter in litigation cannot appeal, where no costs are taxed against them, although an order is made denying a petition to strike their names from the files; but this rule does not prevent a person from appealing, although he has denied or disclaimed interest, if a personal or otherwise prejudicial judgment or decree is nevertheless rendered against him, as in the case of a deficiency judgment in a suit to foreclose a mortgage, and in other like cases."

The judgment in the present case, as noted, was simply for the return of the cattle by Childers to Vrenon and by Vrenon to Mrs. Leonard. The costs and accounting awarded to Mrs. Leonard were waived by her and are out of the case. The plaintiff did not seek and was not awarded a judgment in the alternative. No money judgment of any kind is involved.

■ Treating then the situation as involving a defendant who had once owned an interest in the property but whose interest in the subject matter of the action had ceased either before or during the pendency of the action, the general rule is thus stated in the text. 4 C.J.S., Appeal and Error, sec. 181: "The general rule is that a party cannot prosecute an appeal or writ of error to reverse a judgment, order, or decree, where his interest in the subject matter or controversy has ceased, either before the suit was commenced or pendente lite, by conveyance, sale, assignment, release, or operation of law, so that the judgment, order, or decree does not

prejudice him, although it may be erroneous and prejudicial to other parties." This statement is supported by cases cited in note 21, id., from United States district and circuit courts, Kentucky, Louisiana, Tennessee, Texas and Washington. The text continues: "However, it has been held that, where a vendee or grantee pendente lite is not allowed to be made, or is not made, a party, the vendor or grantor may appeal, although he has conveyed all his interest; and there are certain other exceptional cases in which appeals or proceedings in error have been sustained after a conveyance, sale, or assignment by appellant or plaintiff in error."

In support of the first clause above is cited Moore v. Jenks, 173 Ill. 157, 50 N.E. 698. In that action Jenks had filed a cross bill to Moore's complaint for a mortgage foreclosure, in which Jenks set up his ownership of a sheriff's certificate of sale to the property. Moore, in answer to the cross bill, alleged Jenks' assignment thereof to Morgan & Wright and their assignment to Woodland, that Woodland was the owner and that appellant had no longer any interest in the property, and asking that Woodland be substituted. This was denied. Jenks appealed from an adverse judgment and a motion was made to dismiss the appeal by invoking "the well known rule * * * that a party cannot assign as error that which does not affect him or his rights but is prejudicial only to others, who do not complain." The court held that such rule did not apply because the transfer was made pendente lite and the final decision would be binding not only on the parties litigant but on those who derived title under them by alienations made pending the suit; that Woodland, holding under Jenks, had important rights at stake, that the decree set aside the certificate of sale of which he was the owner and for which he had paid some $17,000 to redeem from a sale under a trust deed and that, whether or not the court was correct in refusing to grant Woodland's petition to be made a party defendant, it was apparent that the

decree seriously affected his rights, and that accordingly Jenks could prosecute the appeal as the representative of Woodland who held under him. An earlier Illinois case, Norris v. Ile, 152 Ill. 190, 38 N.E. 762, 43 Am.St. Rep. 233, is cited in support of this holding.

In support of the text statement in C.J.S. cited above to the effect that in other exceptional cases appeals have been permitted after a conveyance, sale or assignment by the appellant, cases are cited which have no application here. A typical example is that of a grantor taking a purchase money mortgage back from his grantee. Another is where the property claimed by appellant has been sold on foreclosure and he owns the equity of redemption. A cross reference is made to sections 404 and following of the text involving statutory prosecution of an action or an appeal after transfer either in the name of the original party or by substitution.

■ Appellants also rely on N.C.L., sec. 8561, which provides: "An action shall not abate by the death or other disability, of a party, or by the transfer of any interest therein, if the cause of action survive or continue. * * * In case of any other transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action. * * *" No authorities are cited to support the contention that this section authorizes Childers and Vrenon to appeal as aggrieved parties. California, under a similar statute, has consistently held that this statute was for the benefit of the transferee, and gave to the transferee only the option to proceed through himself or in the name of his grantor. "Under that section it was the right of the successors in interest in this case to prosecute this action in one of these forms. The party who had transferred his interest divested himself of any power to control the action." Tuffree v. Stearns Ranchos Co., 124 Cal. 306, 57 P. 69, 70, and cases therein cited. See also Cranmer v. Howard, 45 S.D. 136, 183 N.W. 124.

In the present case it is strongly urged that despite

the transfers, the rights of Childers and Vrenon, though not in the cattle themselves, will be seriously affected— as to Childers because of his liability on an implied warranty of title, and as to Vrenon on his actual warranty of title (besides the withholding of $7,000 of his purchase money), and that the rights of the Bowlers will similarly be seriously affected because in the event of a dismissal of the appeal the adjudication of title in Mrs. Leonard, both under the divorce decree and under the judgment appealed from, will be asserted as binding against them. We think that under the particular circumstances of this case neither Childers nor Vrenon can successfully advance this position. The answers of both defendants in the district court, as well as the evidence adduced by them in the district court, were a complete justification of Mrs. Leonard's having made them both parties defendant. It was not until the supplementary proceedings, through which Mrs. Leonard was attempting to obtain information necessary to enable her to enforce her judgment, that Childers and Vrenon disclaimed title. Milton D. Bowler and Milton A. Bowler were both called as witnesses at those proceedings by Mrs. Leonard, and testified to their purchase from Vrenon of the identical cows and bulls which Vrenon had purchased from Childers and which Childers had purchased from Belanger. All of these sales, as noted above, were consummated within the space of comparatively a few days, the first being July 31, 1948 and the latter sales in the early part of August, 1948. The supplementary proceedings against Childers and Vrenon and the prosecution of their appeal from judgment against them were pending at the same time, and during approximately the same period the Bowlers were prosecuting their mandamus against the sheriff to compel his return to them of the same cattle which the sheriff had seized under the judgment and execution. The Bowlers avoided any participation in any proceeding involving the issue of their title to the property. If we can assume their lack of knowledge of the Belanger divorce suit in

which Mrs. Belanger was held to be the owner of the livestock, and if we can assume their lack of knowledge of the commencement of her action against Childers and Vrenon, they knew of the pendency of her action to recover these same cattle some seven or eight months before her judgment was entered, and they were in full knowledge of the circumstances through the supplementary proceedings in which they testified as witnesses. They made no attempt to intervene to assert their title. Title was not an issue in the mandamus proceeding. The vice of the sheriff's action there was in taking the cattle under process against Childers and Vrenon to which the Bowlers were not parties, from the Bowlers, who claimed title and right of possession. The Bowlers avoided an action to recover possession in which their rights could have been tried. They avoided asking to be substituted for Childers and Vrenon in the pending suit or in the appeal. Yet through the appearance of their counsel as amici curiae they have injected themselves into the appeal while retaining the right to assert (with what success we are not called on here to determine) that they are not bound either by the judgment in the original action or by an affirmance thereof in this court or by the dismissal of the appeal initiated by Childers and Vrenon.

It is clear that this situation is entirely different from that appearing in Moore v. Jenks or in the various cases cited by appellants as exceptions to the general rule stated in the text and in many cases cited by respondent.

In Hartford National Bank & Trust Co. v. Malcolm-Smith, 129 Conn. 67, 26 A.2d 234, 235, 140 A.L.R. 805, the trust company appealed from an action of the superior court erasing from the docket an appeal from a decree of the probate court removing the plaintiff as trustee of a testamentary trust. In support of its right to appeal as an aggrieved party, the trust company claimed that the finding of the probate court that it had neglected its duty would be res adjudicata should it be sued for damages for such fault, and that therefore it

had a pecuniary interest justifying the appeal. The decision turned on the court's conclusion that the judgment would not be res adjudicata as regards the issues determined in it because the person claimed to be bound by it would not have been a party to the first action in the same capacity as that in the second (citing a Connecticut and a New York case) "Where a person is a party to one action solely as trustee, the judgment does not constitute res adjudicata against him as to the issues therein determined in another action to which he is party solely in his individual capacity" (citing Connecticut, New York, Minnesota and Tennessee cases and texts). The A.L.R. annotation of the case deals entirely with the right of a trustee or an executor to appeal from a decree of removal and is not helpful.

On the present motion to dismiss the appeal both parties are rather canny in their statements as to whether or not the judgment, decreeing ownership and right of possession of the cattle to be in Mrs. Leonard in her suit against Childers and Vrenon, would be res adjudicata in a subsequent action brought by Mrs. Leonard against the Bowlers for recovery of the same cattle sold to them by Vrenon before the commencement of the present action. Amici curiae state that in Mrs. Leonard's proposed action against the Bowlers (in the supplementary proceedings she was given permission to commence such action) she "will set up as against them her alleged title under the divorce decree and under the present judgment. She will contend that if, as this judgment states, Vrenon did not receive title, he could not convey to the Bowlers," and that the questions involved in the appeal are thus important with reference "to the effect of the judgment upon the rights of third parties [the Bowlers]." Thus, amici curiae do not definitely bind themselves by an admission that the judgment would be res adjudicata in such subsequent suit against the Bowlers, but allege their belief that such doctrine of res adjudicata would be asserted. Appellants also emphasize the implied warranty of Childers and the express

warranty of Vrenon to the Bowlers. This would have reference to the application of the doctrine of res adjudicata in a subsequent suit by the Bowlers against Vrenon under Vrenon's warranty and perhaps a further action by Vrenon against Childers, or against Valley Livestock Company on the latter's warranty. Respondent characterizes the claim of such liability on the warranties as an attempt of appellants "to extricate themselves" from the situation in which, by their own showing, they have no present interest in the subject matter of the appeal. In answer to the claim of amici curiae that Mrs. Leonard will contend that if Vrenon did not receive title (so determined by the judgment) he could not convey title to the Bowlers, respondent replies simply that she admires the astuteness of counsel for the Bowlers. So (1) appellants have not asserted positively that the judgment would be res adjudicata in subsequent actions against them on their alleged warranties, (2) amici curiae have not asserted positively that the judgment would be res adjudicata in a subsequent action by Mrs. Leonard against the Bowlers, and (3) respondent has not asserted definitely that the judgment would not be res adjudicata in one or both of such subsequent suits. Each of the three parties (the Bowlers are definitely seeking to protect their rights here, although their counsel appear as amici curiae only) has definitely avoided any positive contention as to the application of the doctrine of res adjudicata and has avoided submitting any authorities on the point. Yet in Hartford National B. & T. Co. v. Malcolm-Smith, supra, the right of the trustee to appeal was determined solely upon this ground.

Careful consideration has been given to other arguments, points and authorities presented in the voluminous briefs of the parties, as well as to the four volumes of transcripts of the four separate proceedings submitted as exhibits in connection with the motion to dismiss the appeal. Such additional matters have not been overlooked, but we find a discussion of them unnecessary.

Such discussion would result only in extending this already too long opinion and would not alter the conclusions reached.

■■ We hold (1) that appellants Childers and Vrenon, by reason of their disclaimers of title made under the circumstances herein recited, are neither such aggrieved parties, nor have they such direct interest in the subject matter of the action or the appeal, as to permit them, or either of them, to appeal from the judgment or from the order denying their motion for a new trial; (2) that, under the circumstances appearing, respondent is not by mere reason of the fact that she made appellants defendants in the action, estopped from moving to dismiss their appeal; (3) that a possible claim of res judicata in a possible future action by Leonard against Bowler, a possible suit of Bowler against Vrenon for breach of an alleged warranty of title, a possible suit of Vrenon against Childers for breach of an alleged implied warranty of title, or possible litigation growing out of an alleged escrow whereunder some $7,000 is said to be withheld from Vrenon by Bowler's financial backers, cannot, nor can any of these possibilities, remove the position of Childers or Vrenon from the effect of the general rule and (4) that neither Childers nor Vrenon is authorized to prosecute the appeal by authority of the provisions of N.C.L., sec. 8561.

The motion to dismiss the appeal is granted and the appeal is dismissed, with costs to respondent.

EATHER, J., concurs.

HORSEY, Chief Justice (dissenting).

After having read carefully the opinion on motion to dismiss the appeal in the instant case, ably expressed by Mr. Justice BADT and in which Mr. Justice EATHER has concurred, I cannot find myself sufficiently in agreement to justify concurrence, and, therefore, I am impelled to dissent.

In view of the fact that the defendants, Childers and

Vrenon, in the lower court were made parties and sued by the plaintiff, Mrs. Leonard, and that in such supplementary proceeding their interest as to 41 milk cows and 2 bulls, and for accounting of the proceeds of the sale of milk and sales of certain calves from said cows during the period of defendants' alleged unlawful possession of them, were involved, and in which, by the judgment of the lower court, same were ordered to be returned, does not satisfy me to hold that the motion to dismiss the appeal should be granted, without such appeal being fully argued and determined by this court.

It is true that Childers and Vrenon, in the midst of the proceedings in the court below, were led to admit affirmatively that, in effect, they had parted with their possession of said cattle, and that, in effect, they had disclaimed title or possession of them. I do not believe, however, that solely because of such disclaimer by Childers and Vrenon, that equitably and fairly such acknowledged transfer of possession of the cattle from Belanger to Childers and then from Childers to Vrenon, and their subsequent transfer from Vrenon to the Bowlers (the latter not being parties to the proceeding) necessarily should have precluded, because of such transfer, the determination of the other existing obligations that had arisen as to the several transactions between these respective parties, and which, assuming that certain factors were disclosed from the evidence at the proceeding, may properly, from a legal standpoint, justify further consideration as between the rights of Mrs. Leonard and those of Childers and Vrenon. Mrs. Leonard, formerly Mrs. Belanger, and Mr. Belanger were husband and wife, and divorce was pending. A restraining order preventing Belanger from making sales of milk from the cows and collecting the proceeds, had been released, and it may have been that Belanger took advantage of such restraining order having been released, and may have reported to Childers that he had authority, as agent for Mrs. Leonard, to sell such cattle to Childers, and Childers may have believed him, and the transfer may have

resulted. Relying upon such representations, Childers orally warranted the cattle to Vrenon, and Vrenon, by express warranty, transferred the cattle to the Bowlers. The rights of innocent third persons may have been involved, and such may not have been fully determined in the court below, and valid objection may have resulted, which should be further determined.

This justice has been fully occupied in writing opinions in other cases, and has not had an opportunity fully to read and consider the evidence adduced in the court below in such supplementary proceeding. Notwithstanding that fact, he feels impelled, in view of the opinion of the majority of the justices of this court, that he not delay further the filing of the majority opinion. It seems to me that in this proceeding, complicated as it is, and involving serious conflicts of the evidence, that there should not be a dismissal of the appeal, but that, on the contrary, equity and justice, in my opinion, require a full consideration of the appeal upon its merits, particularly as to the questions of law involved.

ON PETITION FOR REHEARING

(On motion to dismiss appeal)

January 11, 1951.

*Per Curiam:*

**Rehearing denied.**