[No. 2208]

## BANK OF ITALY (A CORPORATION), APPELLANT, *v.* C. P. BURNS, AND A. A. BURKE, AS SHERIFF OF WASHOE COUNTY, STATE OF NEVADA, RESPONDENTS.

[156 Pac. 932]

1. PROPERTY—POSSESSION AS EVIDENCE OF OWNERSHIP.

The circumstances surrounding the passing of possession of a car from consignor to consignee not being disclosed, a presumption of law is raised, under the rule that possession of property is *prima facie* proof of ownership.

2. JUDGMENT—CONCLUSIVENESS—PRIVITY—POSSESSION OF PROPERTY —PERSONS BOUND.

Under the rule that judgments are conclusive and binding not only on the parties to the action in which it was rendered, but on persons in privity with them in respect to the subject-matter of the litigation, where after possession of a car had passed from P. to C., and in an action by B. against C. it had been attached and judgment rendered for B., a bill of sale of the car was given by P. to I., the judgment is admissible to show title and right of possession in B. in replevin for the car by I. against B.

### ON PETITION FOR REHEARING

1. PRESUMPTION OF OWNERSHIP—BILL OF SALE.

While presumption of ownership which flows from possession may be overcome by showing that some person other than the one in possession is the real owner, the mere introduction in evidence of an alleged bill of sale by a claimant of the property not in possession does not tend to give such claimant a stronger title than could have been asserted by the original consignor of the property who executed the bill of sale.

2. SALES—JUDGMENT—PRIVITY.

The purchaser who acquires property after suit brought in which title to the property is involved is privy to the judgment; but, on the other hand, a purchaser of property before such suit is brought is not privy to the judgment.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran*, Judge.

Replevin by Bank of Italy against C. P. Burns and A. A. Burke, Sheriff of Washoe County. Judgment for the defendants, and plaintiff appeals. **Affirmed.**

*Mack & Green*, for Appellant:

The court erred in admitting testimony offered by the defendants and objected to by plaintiff. There is no evidence whatever to sustain the judgment, but a complete showing that the property belonged to appellant. The judgment roll and the writ of attachment in the case of C. P. Burns against the Consolidated Motorcar Company should have been excluded. It is a generally accepted rule that a transaction between two parties in judicial proceedings ought not to be binding upon third parties. (Jones on Evidence, par. 605; *Geller* v. *Huffaker*, 1 Nev. 22; Greenleaf on Evidence, vol. 1, pars. 522, 523; *Carter* v. *Bennett*, 4 Fla. 352; *Costello* v. *Burke*, 63 Iowa, 361; *Henderson* v. *Western Ins. Co.*, 10 Rob. 164, 43 Am. Dec. 586; *Cravens* v. *Jameson*, 59 Mo. 73; *Pratt* v. *Jones*, 64 Tex. 694; *Duncan* v. *Helm*, 8 Gratt. 68; *Lardlaw* v. *Kline*, 8 W. Va. 218; *Homer* v. *Landis*, 56 Atl. 305; *Hall* v. *Grace*, 60 N. E. 932; *Rothchild* v. *Schwarz*, 59 N. Y. S. 527; *Bell* v. *Staache*, 14 Cal. 203.) "Recitals in an instrument are not evidence as against strangers to the instrument." (14 Ency. of Evidence, 698; *Oliver* v. *Ellzy*, 11 Ala. 632; *Dennis* v. *Struck*, 108 S. W. 957; *Sonoma Water Co.* v. *Lynch*, 50 Cal. 503.)

The presumption of ownership from possession never prevails against the true owner. The mere possession of property is only *prima facie* evidence of title. (*Hanson* v. *Chiatovich*, 13 Nev. 398; *Hoppin* v. *Avery*, 49 N. W. 889; *Wright* v. *Solomon*, 19 Cal. 76.)

*Dodge & Barry*, for Respondents:

Possession is *prima facie* evidence of ownership. Where a person is in undisputed possession of goods or chattels, the law presumes that they are his, and he cannot be deprived of them unless the claimant, by direct

proof, shows a better right to their possession. (Greenleaf on Evidence, vol. 1, sec. 34; 9 Ency. of Evidence, 260; 16 Cyc. 1070; *Goodwin* v. *Garr*, 8 Cal. 616; *Trevarrow* v. *Trevarrow*, 31 N. W. 908; *Amick* v. *Young*, 69 Ill. 542.)

In an action of replevin, the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of the defendant's title. (24 Am. & Eng. Ency. Law, 483; *Davis* v. *Warfield*, 38 Ind. 461.)

The burden was upon the plaintiff to prove his title. As he stood upon the bill of sale, it was his duty to prove who was the receiver, that it was the receiver's signature, and that the receiver had authority from the court to sell. (Beach on Receivers, 218, 253; Smith on Receivership, sec. 34, p. 298; Anderson on Receivers, sec. 598, p. 809; *Hagan* v. *Holderby*, 125 Am. St. Rep. 960.)

By the Court, COLEMAN, J.:

This is an appeal from a judgment of the district court of Washoe County, and from an order of said court denying a motion for a new trial.

Plaintiff, appellant in this court, brought an action in replevin to recover possession of a certain motor truck. The truck was shipped by the Pope-Hartford Manufacturing Company of Connecticut to the Consolidated Motorcar Company at San Francisco. The bill of lading, with a draft attached, was sent to the plaintiff, with instructions to deliver the bill of lading to the motorcar company upon payment of the draft. The draft was not paid, but in some manner the consignee got possession of the truck and shipped it in its own name to Reno, Nevada, to be sold. Before a sale was made, and while the truck was in Reno, it was attached in an action brought by respondent C. P. Burns. Thereafter the appellant paid the Pope-Hartford Manufacturing Company the amount due on the bill of lading, taking from it a bill of sale for the truck. Upon respondent's refusal to surrender possession of the truck to appellant upon demand, this action was brought, resulting in the judgment in favor of respondent. The name of the Consolidated Motorcar Company was changed

to Pope-Hartford Company of California after the car in question had been shipped.

It is the contention of appellant that, since the Consolidated Motorcar Company did not pay the draft drawn upon it by the Pope-Hartford Company of Connecticut, the Bank of Italy had no authority to surrender to it the bill of lading, and that hence no title passed from the Pope-Hartford Company of Connecticut to the Consolidated Motorcar Company, and consequently no right or title was acquired by the attachment proceedings.

This contention makes necessary a consideration of the evidence in the case.  The only witness called on the part of appellant who gave testimony concerning the disposition which was made of the truck in question was one W. M. Phelps, who was the representative of the Pope-Hartford Company for the entire Pacific Coast.  He testified that it was his duty to keep track of all shipments made by the said company and to see that all drafts were paid, and proceeded:

"Q. Then what did you or your people do with that truck after it was unloaded into the warehouse, if you know?  A. Well, one of the parts of my duties are, on the coast here, in shipments that are made by the Pope Manufacturing, when cars arrive here, either San Francisco, Portland, or Seattle, Los Angeles, or other places, if they are not taken up promptly, the Pope Manufacturing Company, when any of our shipments are delayed, and are not taken up, a part of my duties are, whenever I get any information on this point—I have a record of these shipments—I go to these places and check these cars up. Now, I also have a record, as soon as the draft is paid, the Pope Manufacturing Company advises me of the receipt of the payment on that draft.  Not having received notification of the payment of this draft on my return up the Northwest—I forget, just; Seattle, Portland, up there some place—in checking up the cars on the records I noticed the absence of this three-ton truck, and I immediately went to the bank and inquired what had become of the truck.  They informed me that the

dealers there in San Francisco had a sale for it in Reno, Nevada, and had shipped it there. I asked them 'on whose authority they had shipped the truck from the warehouse without paying the draft,' and they said they 'had done that on their own initiative, with the understanding that there was a sure sale for it here, and that, if it was not, it would be returned immediately.' I notified them at the time that that was sufficient evidence for us or our corresponding bank for us to demand payment of that draft. I immediately notified the Pope Manufacturing Company. They, in turn, made a demand on the Bank of Italy through the bank under which this draft was drawn to the Bank of Italy for the Pope Manufacturing Company for that truck.

"Q. Was that the consideration for which this bill of sale was given? A. Yes, sir.

"Q. As a matter of fact, did the motorcar company—whatever you call it—Mr. Barry is technical. * * * Q. Did the Consolidated Motorcar Company ever have anything in the nature of possession of this car, or have any right, title, or interest in it at any time?

"Mr. Barry—We object on the ground that it is a conclusion; let him state the facts.

"Q. What title, interest, or possession did the Consolidated Motorcar Company have in this car?

"Mr. Barry—I object on the ground it is calling for a conclusion.

"A. What title?

"The Court—It calls for a conclusion. Proceed.

"Q. Well, then, please state if you know what—whether the Consolidated Motorcar Company ever had possession of this car—this one, this particular one in question. A. To my knowledge they never had possession of it.

"Q. Will you state whether they paid for the car at any time? A. They never did; no, sir.

"Q. Will you state whether or not they obtained from the Pope-Hartford Company of Connecticut—whether the receiver of the company, the bill of lading by which the car was carried from Hartford, Conn., to San Francisco?

A. Well, if they received that they received it from the Bank of Italy and they could not get that from the Bank of Italy without paying the draft.

"Q. Then you, as agent of the company, never did deliver to them that— A. No, sir.

"Q. Bill of lading?   A. No, sir.

"Q. Do you know whether or not the Pope-Hartford Company of Connecticut was in any wise indebted to the Consolidated Motorcar Company?

"Mr. Barry—Objection on the ground that it is immaterial.

"Q. Or whether or not there was any indebtedness due to the Pope-Hartford Company of California from your company?

"Mr. Barry—Object that it is immaterial.

"The Court—Where is the relevancy of this, Judge?

"Mr. Mack—To show that there was no moneys on deposit or anything due from the Pope-Hartford Company to pay for this car in favor of the Consolidated Motorcar Company.

"The Court—Sustain the objection to the question in its present form.

"Q. Do you know about what that car is worth, or was worth this year? A. Well, the retail price of it was $3,600.

"Q. $3,600?   A. Yes, sir.

"Q. That would be to the dealer? A. That was the regular retail price.

"Q. The dealer gets his commission out of that on the sale? A. Yes.

"Q. To whom, if you know, was the car shipped to Reno? A. Well, the only information I got, when I discovered that this car had been shipped and had not been paid for, was that, if I remember correctly, the bank informed me that they had shipped it to a concern by the name of Burns & Trosy; I think was the name.

"Q. Did Mr. Burns and Trosy pay for it? A. Well, they didn't pay us for it, because we never had— Our business dealings were direct with the Bank of Italy.

"Q. So far as your company is concerned, they didn't pay you a cent?    A. Not a cent; no, sir."

On cross-examination the witness testified:

"Q. When was that car shipped from the East, do you know?    A. I cannot tell the date; no, sir.

"Q. And it was shipped with the draft attached to the bill of lading, was it not?    A. Yes, sir.

"Q. And this draft was for the factory's price?    A. Yes, sir.

"Q. And that was shipped to San Francisco to the Consolidated Motorcar company?    A. To their order; yes, sir. *   *   *.

"Q. And had the draft at that time been paid?    A. No, sir.

"Q. And the car was afterwards sent to Burns & Trosy by the Consolidated Motorcar Company?    A. Through their orders, I believe.

"Q. Then, the Bank of Italy must have stood good for the amount of the draft; that is, you would consider it so?    A. Well, I don't know what arrangement they had with the Pope-Hartford Car Company of California. They shipped the car, or it was shipped. *   *   *

"Q. You don't know what arrangement the Pope Company of California or the Consolidated Motorcar Company made with the Bank of Italy do you?    A. No; I don't.

"Q. You don't know whether they paid the Bank of Italy or borrowed the money from the Bank of Italy or what kind of an arrangement, if any?    A. No; I cannot say that.

"Q. But they had to make some arrangement sufficient to get the truck out of the warehouse?    A. Unquestionably. *   *   *

"Q. Of course, this car was released; you looked to the bank, did you?    A. Yes, sir."

From the foregoing extracts it will be seen that the witness did not claim to know the real circumstances under which the Consolidated Motor Car Company or the Pope-Hartford Company of California, to which the name was changed, acquired possession of the truck. So far

as appears, the Bank of Italy may have surrendered the bill of lading, agreeing to remit the amount of the draft and to look to the consignee for the payment to it of the amount of the draft. Plaintiff was in possession of the facts, but did not see fit to disclose them. It has been said:

"We believe the rule upon this subject is properly laid down in Cyc., which reads as follows: 'Failure to call an available witness possessing peculiar knowledge concerning facts essential to a party's case or to examine such witness as to the facts covered by his special knowledge, especially if the witness be naturally favorable to the party's contention, gives rise to an inference, sometimes denominated a "strong presumption of law," that the testimony of such uninterrogated witness would not sustain the contention of the party. * * * ' (16 Cyc. p. 1062.)" (*Sherman* v. *S. P. Co.*, 33 Nev. 402, 111 Pac. 422, Ann. Cas. 1914A, 287.)

Whether or not this rule is applicable to the case at bar, we do not deem it necessary to decide.

**1.** Whatever the real facts leading up to the acquiring of possession of the motor truck by the consignee, it cannot be disputed that the possession of the truck did, in fact, pass from the consignor to the consignee. Where the circumstances surrounding the change of possession are not disclosed, it seems to us that we are bound by the presumption of law which flows from possession. That possession of property is *prima facie* proof of ownership is a rule of law which this court has had occasion to state in several cases; the latest being *Shearer* v. *City of Reno*, 36 Nev. 443, 136 Pac. 710. See, also, *Gordon* v. *District Court*, 36 Nev. 1, 131 Pac. 134, 47 L. R. A. n. s. 178; *Patchen* v. *Keeley*, 19 Nev. 413, 14 Pac. 351; Jones on Evidence, sec. 17; 9 Ency. of Evidence, p. 260B; *Goodwin* v. *Garr*, 8 Cal. 616; 16 Cyc. 1074; 10 R. C. L. p. 877.

**2.** It is contended by counsel for appellant that the trial court erred in admitting in evidence the judgment roll in the attachment suit of *Burns* v. *Consolidated Motorcar Company*, for the reason that the Bank of Italy was not a party to that action. It appears from the record of

334    BANK OF ITALY *v.* BURNS  [39th Nev.

Opinion of the Court—Coleman, J.

the case at bar that the truck in question was attached in the suit of *Burns* v. *Consolidated Motorcar Company* on July 25, 1913, and that appellant did not obtain its alleged bill of sale to the truck from the receiver of the Pope-Hartford Manufacturing Company of Connecticut until January 7, 1914, long after the possession of the car had passed from the last-named company to the Consolidated Motorcar Company, and after the attachment. Thus it will be seen that, while appellant was not a party to the suit, it was necessary that the judgment roll in that case be introduced in evidence to show respondents' title and right of possession. According to appellant's theory of the law, even if the Consolidated Motorcar Company had paid the draft, got the bill of lading, taken possession of the truck in the usual course of business and shipped it to Reno to be sold, the judgment roll could not be introduced in evidence. This contention is not founded upon either reason or authority, and it should not require the citation of authorities to refute it. However, if authority be deemed necessary on this point, we quote as follows from 23 Cyc. 1253:

"A judgment is conclusive and binding, not only upon the parties to the action in which it was rendered, but also upon persons who are in privity with them in respect to the subject-matter of the litigation."

No error appearing in the record, it is ordered that the judgment and order appealed from be affirmed.

## ON PETITION FOR REHEARING

By the Court, COLEMAN, J.:

Appellant has filed a petition for a rehearing in this case, in which it is contended that our interpretation of the testimony is incorrect.

We have again considered the evidence, and are convinced that no other conclusion than the one formerly reached by us can be sustained.

1. It is also insisted that since possession is only *prima facie* evidence of ownership, the presumption of ownership which we found to have been in the Consolidated

Motorcar Company at the time of the attachment by Burns is overcome by the bill of sale of appellant. It is unquestionably true that the presumption of ownership which flows from possession merely can be overcome by showing that some person other than the one in possession is the real owner. But while this is true as a general proposition of law, the mere introduction in evidence of the alleged bill of sale to appellant did not tend to give it a stronger claim to the car than could have been asserted by the Pope-Hartford Company of Connecticut, the consignor. If appellant had followed up the introduction of its bill of sale by showing affirmatively that the Bank of Italy improperly surrendered the possession of the car to the Consolidated Motorcar Company, there would be some foundation for the contention.

**2.** Fault is also found with what we said in passing upon the action of the trial court in admitting in evidence the judgment roll in the attachment suit of *Burns* v. *Consolidated Motorcar Company.* We quote from the petition for rehearing:

"The court further in its decision says that the plaintiff is bound by the judgment which we claimed was erroneously admitted in evidence, because we are privy to that judgment. This is not the law and is not the fact. In order to be a privy to the judgment, the title of the party to the truck must have been in question and must have been passed upon by the court. The mere fact that the property was under attachment for the debt of the Consolidated Motorcar Company does not make the Bank of Italy the true owner of the property privy to that judgment."

Numerous authorities are quoted to sustain counsel's contention. We quote from two of them:

"Every person is privy to a judgment or decree who has succeeded to an estate or interest held by one who was a party to such judgment or decree, if the succession occurred after the bringing of the action." (24 Am. & Eng. Ency. Law, 2d ed. p. 746.)

The converse is stated in another quotation:

"It is well understood, though not usually stated in express terms in works upon the subject, that no one is privy to a judgment whose succession to the rights of property thereby affected occurred previously to the institution of the suit." (Freeman on Judgments, vol. 1, sec. 162, 4th ed.)

From the authorities quoted, it appears that when one purchases property *after* a suit is brought, in which the title to it is involved, the purchaser is privy to the judgment; but, on the other hand, if he purchases *before* the suit is brought, he is not privy to the judgment. From the opinion in this case it appears that appellant did not obtain its bill of sale until nearly seven months after the suit was brought. The fact that the Pope-Hartford Company of Connecticut, from whom appellant got its bill of sale, was not a party to the attachment suit, matters not, for the reason that its title was cut off by reason of the possession of the car passing to the Consolidated Motorcar Company, and the subsequent proceedings.

Respondent makes a motion to dismiss the petition for rehearing for the reason that a copy of it was served by mail instead of in the manner provided in chapter 48, Revised Laws, for the service of notices and other papers.

Rule 15 of this court does not provide in what manner a copy of such petition shall be served; and in view of the fact that we have concluded that the petition should be denied, for the reasons already stated, we do not find it necessary to pass upon the motion, but feel that it would not be out of place to call the attention of the bar to the seriousness of the point suggested.

The petition for a rehearing is denied.