MILTON A. BOWLER AND MILTON D. BOWLER, APPELLANTS, v. STELLA B. LEONARD, FORMERLY KNOWN AS STELLA B. LEONARD BELANGER, NOW STELLA B. BRYSON, RESPONDENT.

Nos. 3734 and 3737

April 29, 1954.                                      269 P.2d 833.

*Griswold, Vargas* and *Bartlett,* of Reno, for Appellants.

*John S. Sinai, John W. Coulman,* and *David P. Sinai,* all of Reno, for Respondent.

372

# OPINION

By the Court MERRILL, J.:

This is the fifth occasion on which we have been confronted with the troubles of this dairy herd in its patient search for home and master.*   Notwithstanding a sympathetic disposition to bestow upon these creatures in their advancing years a well-earned freedom from litigious strife, we are compelled by this decision to sentence them to further controversy.

This is an action for claim and delivery brought by respondent as plaintiff to recover possession of the herd. Separate appeals have been taken: (1) from judgment; (2) from order of the trial court appointing a receiver. The appeals were consolidated for argument before this court and this opinion will dispose of both matters.

## CASE No. 3737

This appeal is from judgment of the trial court determining title to the herd to be in the respondent, Stella Leonard, and awarding her damages for wrongful detention.   The determination of ownership was based upon earlier adjudications and, upon this basis, was taken from the jury by the trial judge.  Appellants assert error in this respect.  The court relied upon two distinct earlier

---

*Connected cases: Bowler v. Vannoy, 67 Nev. 80, 215 P.2d 248, 216 P.2d 274; Leonard v. Belanger, 67 Nev. 577, 222 P.2d 193; Belanger v. Leonard, 68 Nev. 258, 229 P.2d 153; Bowler v. Dist. Ct., 68 Nev. 445, 234 P.2d 593.

adjudications. Appellants contend that neither was binding upon them. Before examining the prior litigations and the specific points of law involved in appellants' contentions, a general factual panorama may be helpful.

On June 25, 1948, respondent commenced suit for divorce against her then husband, David Belanger. In that suit she claimed ownership of the present herd as her separate property. On September 14, 1948, a decree of divorce was granted her which declared the herd to be her separate property.

The pendency of this suit was an eventful period for the herd. On July 31 David Belanger purported to sell the herd to one Childers. He then pocketed the proceeds, left town, and has not been heard from since. On August 2 Childers sold to one Vrenon. On August 5 Vrenon sold to appellants.

Upon securing her decree the following month, respondent went in search of her property. She discovered the first two transactions but somehow the third escaped her. On November 4, 1948, she commenced an action in claim and delivery against Childers and Vrenon. No one sought to disabuse her of her innocent assumption that she was suing the proper parties. Indeed, Childers and Vrenon behaved in every respect as owners might be expected to behave and the action was vigorously contested, as we shall see; even to the point of appeal to this court. On October 19, 1949, respondent secured judgment. Once again she went in search of her property only to learn she had fallen short in its pursuit. On December 12, 1950, this action was brought against appellants.

We turn first to an examination of the divorce action and decree. The court below ruled that the decree established ownership of the herd to be in respondent as of June 25, 1948, the date upon which that suit was commenced. The court further ruled that that decree was binding upon appellants through privity with David

Belanger. In our view the court committed no error in this respect.

By appellants' first contention with reference to this decree they make collateral attack upon it. They contend that the divorce court was without jurisdiction to take any effective action respecting respondent's separate property or make any determination with respect thereto.

Sec. 9463, N.C.L.1929, Supp 1943–1949, provides that in granting a divorce the court "shall make such disposition of the community property of the parties as shall appear just and equitable * * *." The statute prior to 1943 directed disposition of both community and separate property of the parties. Appellants contend that by the 1943 amendment "the legislature deliberately took away from the courts all jurisdiction over separate property." This, we feel, is putting the proposition too broadly.

It is clear that since 1943 the divorce court may not apportion separate property between the parties in accordance with its conception of the equities of the situation. The court here did no such thing, however. It left the separate property where it found it. If the court is to dispose of the community as the statute requires it to do, it is obvious that it must have power to ascertain the extent of the community. It must, then, be recognized to have power to examine into the nature of the property rights of the parties and determine the character of such rights in the light of the marital relationship. It is quite possible that a court in so acting may overstep the bounds of proper inquiry and deal with disputes having no relation to rights arising from the marital relationship; disputes foreign to the divorce court's limited field of inquiry. In such a case, however, (the court otherwise having jurisdiction over the parties and the property), the remedy is by direct attack. Reed v. Reed, 65 Neb. 849, 91 N.W. 857, 70 Neb. 779, 98 N.W.

73; Taylor v. Taylor, 54 Ore. 560, 103 P. 524; cf. Lemp v. Lemp, 62 Nev. 91, 141 P.2d 212, 148 A.L.R. 1104.

Having jurisdiction over the person of David Belanger and the property in question, it cannot be said that the divorce court acted without jurisdiction in making the determination in question. As against David Belanger it has, then, conclusively been determined that as of June 25, 1948, the herd was the property of respondent.

Appellants next contend that although the decree may be held binding upon Belanger, it is not binding upon them since they were not parties to the suit. They were, however, in privity with Belanger, claiming under him by virtue of a transfer by him of his rights subsequent to commencement of the divorce suit. They are consequently bound to the same extent. Ahlers v. Thomas, 24 Nev. 407, 56 P. 93; Bank of Italy v. Burns, 39 Nev. 326, 334, 156 P. 932, 159 P. 863; See 50 C.J.S. 355 et seq. (Judgments, sec. 810.)

Appellants next contend that regardless of the extent of the bar by res judicata, respondent has lost all right to assert it. This contention is based upon certain testimony given by respondent under cross-examination during the trial of her action against Childers and Vrenon. Appellants construe this testimony as an admission that certain of the cattle awarded her as her separate property had in fact been owned by David Belanger and had not been her separate property at the time of commencement of the divorce action; that she had knowingly misrepresented the ownership of the cattle to the divorce court. Respondent disputes appellants' position upon the law: that, assuming appellants' construction of the testimony to be correct, the result would be a loss of right to rely upon the bar of res judicata. We need not decide this question. In our view appellants' construction does not necessarily follow from the testimony involved.

The testimony has to do with the purchase of certain cows. Respondent testified as follows: "Q. Who purchased those cows? A. Well, I was in the hospital at the time and Mr. Belanger said he could get them from Joe Cliff but he didn't have to pay anything on them; that Mr. Chism would take out $65 a month from the milk bill, plus interest. * * * Q. And then as I understand you, Mrs. Belanger, in so far as those cows are concerned, Mr. Belanger bought those in his name, is that correct? A. Yes. Q. He assumed the responsibility for those cows? A. Yes."

We cannot say that this testimony without further detail clearly reflects the state of title. Certainly Belanger did not pay for the cows out of his own money. Apparently payment was to come from proceeds of milk produced by the cows so purchased plus the cows already owned by respondent. Belanger apparently felt obligated to consult with respondent on the matter before proceeding. The record shows that the cows were not segregated from respondent's but were commingled to form a single herd. We cannot say that under the facts disclosed respondent could not in good faith have believed that the cows so purchased were hers, either in law or in equity, and formed a part of her herd.

Appellants next contend that the decree is not sufficiently definite in its description of the herd to enable it to stand as res judicata. The decree referred to "45 head of milch cows and 15 calves," describing them as on respondent's ranch. We regard this as ample to bind David Belanger and all in privity with him.

Appellants contend that even though such description may have been sufficient for purposes of the divorce decree, it can hardly serve the purposes of claim and delivery, for which purposes the trial court has utilized it. The court did not, however, rely upon the divorce decree alone for purposes of identity. There is ample

testimony in the record to the effect that the herd with which we are here concerned was the same herd (or a substantial portion of it) with which the divorce decree dealt. Accordingly we feel there is no merit in this contention.

The herd as described in the complaint in this action was comprised of 41 cows and 2 bulls. Appellants' final contention with reference to the divorce decree is that it cannot constitute any adjudication as to title to the two bulls, since the decree dealt with cows and calves but no bulls. Respondent points to testimony to the effect that the bulls, at the time the divorce suit was brought, were bull calves and were counted among the calves covered by the decree. Appellants rather scornfully suggest that the transformation from calves to bulls must have occurred rather suddenly. We do not regard this as necessarily so. Certainly there comes a time in the life of every bull calf when it becomes a bull. We cannot say, as matter of law, that this significant moment had not been reached during the brief but hectic period between commencement of the divorce suit and the sale to appellants.

We conclude that the trial court did not err in ruling the divorce decree res judicata as to appellants. They may not, then, dispute the fact that on June 25, 1948, the herd involved in this action was the separate property of respondent.

This does not dispose of the problem, however. Childers, Vrenon and appellants all contend that, even accepting such ownership, respondent by her conduct either authorized Belanger's sale to Childers, or ratified it, or is estopped to deny such authority. These points were asserted by Childers and Vrenon in respondent's action against them for claim and delivery. By its judgment against them in that action the court decided these matters adversely to them. The remaining question then, is whether, assuming them to be bound by that determination, appellants likewise are bound. The trial court below ruled that they were. Appellants were

thus precluded from presenting to the jury evidence in support of their contentions.

If they be bound it is not through privity with Childers and Vrenon since the sale to appellants occurred one month prior to commencement of that action. Upon two separate grounds, respondent supports the ruling of the trial court.

First: respondent contends and the trial court held that conduct of appellants' counsel in their behalf in connection with the action against Childers and Vrenon has bound appellants by the judgment in that action.

Following that judgment an appeal was taken therefrom by Childers and Vrenon to this court. Counsel for the Bowlers (appellants in the present proceeding) then petitioned this court for an order permitting them as amici curiae to file briefs and present oral argument. In their petition they frankly disclosed their professional representation of the Bowlers and the Bowlers' interest in the outcome. Notwithstanding such interest an order was entered by this court appointing them amici curiae.

Pending the appeal, proceedings supplemental to execution were had in the trial court, bringing to light the Bowlers' claim of ownership and a disclaimer of ownership by Childers and Vrenon. Thereupon respondent moved this court for a dismissal of the appeal upon the ground that Childers and Vrenon by their disclaimers had demonstrated that they had no appealable interest.

Counsel for the Bowlers as amici curiae then filed a memorandum in which they suggested the proper course to be a reversal of the judgment of the lower court, a course frequently followed by appellate courts when the appeal is dismissed upon the ground that the matter has become moot. This court dismissed the appeal but did not reverse the judgment. Leonard v. Belanger, 67 Nev. 577, 222 P.2d 193. The opinion in that matter as originally filed, erroneously attributed to amici curiae certain citations which in fact had been submitted by Childers and Vrenon. The opinion also remarked that the

Bowlers had avoided any opportunity to submit their title to judicial determination. Counsel for Bowlers as amici curiae then petitioned this court for a rehearing: (1) to correct the court's error in reference to the citations; (2) reminding the court that the Bowlers had offered their title for adjudication when, following execution upon the cattle, they had filed a third-party claim. This court corrected the errors relating to the citations but disregarded the reference to the Bowlers' third-party claim. Rehearing was denied.

It is for this conduct of counsel as amici curiae that respondent contends the judgment against Childers and Vrenon should bind the Bowlers. She contends that while counsel were ostensibly acting as amici curiae, they were actually proceeding in active protection of the Bowlers' interests; that they had exceeded the duties of the office of amicus curiae and had misused the office and accordingly had by their action bound those they were in fact representing. She emphasizes that counsel were not satisfied to accept the case as they found it but sought affirmative action by this court.

Much authority is cited by respondent in support of her position. In our view the decisions are distinguishable. In the main they deal with cases where counsel without court approval had injected themselves into a proceeding, designating themselves as amici curiae in so acting. In this case this court, knowing of counsel's interest, had nevertheless appointed them to office. While, under such circumstances, it may yet be possible for counsel by their conduct so to overstep the functions and duties of their office as to bind their clients, the court should not, we feel, be quick to accomplish this result. The seeking of affirmative action by amici curiae is not necessarily improper. See: Haley v. Eureka County Bank, 21 Nev. 127, 26 P. 64, 12 L.R.A. 815; Morrow v. Morrow, 62 Nev. 492, 156 P.2d 827. In this case the affirmative action suggested of the court by counsel might well be considered as consistent with disinterested assistance to the court in protecting against

inadvertent error of procedure or inaccuracy of statement. Certainly the conduct of counsel was not of such a character as to affront the court. The office of amicus curiae is of too useful a character to this court to justify us in converting it into a trap for those whom we have with full knowledge invited to assist us.

We conclude that the trial court was in error in holding appellants bound by the earlier adjudication through the conduct of their counsel before this court as amici curiae.

Second: respondent contends that since, with knowledge of the action against Childers and Vrenon, appellants had sat idly by and permitted it to go to judgment without intervention, they are estopped to deny its binding effect. Respondent asserts the proposition that it is incumbent upon one having knowledge of judicial proceedings concerning property which he claims, to take steps to protect his interest; that he cannot, with knowledge of the suit, fail to assert his claim, thereby misleading the plaintiff into prosecuting the suit to judgment. This proposition we must reject.

In Chase National Bank v. City of Norwalk, 291 U.S. 431, 441, 78 L.Ed. 894, 901, 54 S.Ct. 475, it is stated: "The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. * * * Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights."

To hold otherwise would, we feel, for all practical purposes be to require every property owner fully to advise himself as to the nature of all lawsuits brought within the jurisdiction in which his property is located, lest they relate to his property and he be charged with some degree of notice or knowledge thereof. Such a burden, of course, would be intolerable.

The case of respondent, in her repeated efforts to

secure an effective determination of her rights, is certainly one to create sympathy. Yet even here the rule cannot be said to be unduly harsh. Respondent could have informed herself. Even under our code of civil procedure which preceded N.R.C.P., procedures were available which, if utilized, could have resulted in the locating of the herd and discovery of the claim to it asserted by appellants. In her investigations she simply stopped too soon and assumed too much. Appellants, regardless of the extent to which they may or may not have informed themselves as to the nature of her action against Childers and Vrenon, cannot be said to have been under any legal duty to advise respondent of their claims or to intervene in the action.

We conclude that the trial court erred in holding the judgment against Childers and Vrenon to be binding as res judicata upon appellants and in taking from them their right to present to the jury the defenses which were there adjudicated.

Reversed with costs and remanded for new trial.

## Case No. 3734

This appeal challenges the propriety of the trial court's order, upon the petition of respondent, appointing a receiver to take over possession and management of the herd, title to which is in dispute in this action. We have already refused to review the matter upon petition for writ of prohibition. Bowler v. District Court, 68 Nev. 445, 234 P.2d 593. The merits of the controversy are now squarely presented by this appeal from order denying appellants' motion to terminate the receivership.

With reference to the nature of the office of receiver it is stated in High on Receivers, 4th ed., p. 2, sec. 1: "A receiver is an indifferent person between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation *pendente lite*, when it does not seem reasonable to the court that either

party should hold it. He is not the agent or representative of either party to the action, but is uniformly regarded as an officer of the court, exercising his functions in the interest of neither plaintiff nor defendant, but for the common benefit of all parties in interest. He should be a person wholly impartial and indifferent to all parties in interest. Being an officer of the court, the fund or property intrusted to his care is regarded as being *in custodia legis* for the benefit of whoever may finally establish title thereto, the court itself having the care of the property by its receiver, who is merely its creature or officer, having no powers other than those conferred upon him by the order of his appointment, or such as are derived from the established practice of courts of equity."

By the provisions of sec. 8749, N.C.L.1929, a receiver may be appointed by the court in which an action is pending in all cases where receivers have heretofore been appointed by the usages of the courts of equity. With reference to the discretionary power thus placed in the hands of the trial court, it is stated in High on Receivers, 4th ed., p. 12, sec. 7: "The appointment of a receiver *pendente lite,* like the granting of an interlocutory injunction, is to a considerable extent a matter resting in the discretion of the court to which the application is made, to be governed by a consideration of the entire circumstances of the case. And since the appointment of a receiver is thus a discretionary measure, the action of the lower court * * * will not be disturbed upon appeal unless there has been a clear abuse. But the discretion thus vested in the chancellor * * * is not an absolute or arbitrary one but it is a sound judicial discretion in view of all the circumstances of the case, to be exercised for the promotion of justice where no other adequate remedy exists."

Upon three specific grounds appellants contend that the trial court acted in excess of jurisdiction or, in the alternative, in abuse of discretion.

First, it is contended that this is not a proper case for receivership since an adequate remedy at law exists. If this be true the appointment was improper. Nenzel v. District Court, 49 Nev. 145, 241 P. 317, 43 A.L.R. 1331. "Receivership is generally regarded as a remedy of last resort." 75 C.J.S. 668 (Receivers, sec. 9) ; 45 Am.Jur. 28 (Receivers, sec. 26).

Appellants contend that the provisional remedy of claim and delivery would have provided adequate relief had respondent chosen to avail herself of it by posting bond. The record shows that respondent had claimed lack of financial ability to post bond in the amount required by statute (twice the value of the property sought) and that the court had taken this fact into consideration in determining that no adequate alternative remedy existed. Appellants assert that this does not render the remedy unavailable; that to hold otherwise would be improperly to permit receivership to be utilized as an escape from the protective features of claim and delivery.

To determine the question of adequacy of remedy we must first ascertain the nature of the situation sought to be remedied by the trial court. If that situation be simply that respondent as claimant was being deprived of the possession of property which she claimed, appellants' contentions would appear to have merit. The record amply demonstrates, however, that this was not the situation which gave the court concern; that the inability of respondent to post bond for claim and delivery was not the controlling factor.

In its written decision upon respondent's motion for appointment of a receiver, the court found danger of insolvency upon both sides "and a consequent inability or probable inability of both or either to respond financially to a final adverse order of the court, requiring either party to account and pay over, through the court, the rents, issues and profits of the herd to the time of

final judgment." The court also was reluctant to leave the herd to the management of either party, stating in this regard that "from a study of the records and files of the prolonged controversy of the parties hereto, through all of the actions, including the supreme court proceedings, and from an observation of the parties and counsel in court, it is apparent to the court that bitterness exists between the parties to the litigation, which would reflect upon the quality of the service of either of the parties." In holding a receivership desirable the court also referred to "the very nature of the property and the possibility of its disappearance (wholly or partially) during the litigation, and the admitted losses so far." It held that "from the standpoint of conservation, preservation and administration, to the end that the final judgment of the court be fully effectual, it is highly desirable that a receiver be appointed."

From its opinion filed upon motion subsequently made by appellants to vacate the receivership it is apparent that the court had other matters in mind as well. As reflecting upon the probable interest of respondent, it bore in mind the fact that she had already prevailed in claim and delivery against Childers and Vrenon. It took note of "an adamant attitude about the right to sell or otherwise dispose of the cattle on the part of the defendants." It took note of the fact that while respondent sought 41 cows and 2 bulls, the receiver had been able to take possession only of 16 cows, stating, "Looking at it in retrospect, who can doubt but that [at the time of the appointment of the receiver] there was danger of the herd being 'lost, removed, or materially injured.'"

The court, then, was not concerned with giving to respondent the right to immediate possession of the herd. It was concerned lest any judgment it ultimately might render be empty of relief through loss of the subject matter or wasting of the proceeds of its management and financial inability of the unsuccessful party to respond in damages. It clearly would have been as

reluctant to place the herd in respondent's possession (in absence of security for its return) as to leave it with appellants.

From our examination of the record we cannot say that the considerations which moved the court were without foundation. Under the circumstances we conclude that an adequate alternative remedy has not been shown to exist.

Appellants' second contention is that the court acted in excess of jurisdiction or in abuse of discretion in failing to require respondent to post bond for the protection of appellants in the event the receivership should prove wrongful or unwarranted.

No such bond is required by statute. Under such circumstances it is the general rule that the requirement of such a bond lies within the discretion of the trial court. See: 75 C.J.S. 717 (Receivers, sec. 62).

Appellants state that they have been deprived of possession by the receivership as effectively as they would have been by the provisional remedy of claim and delivery, in which event a bond would have been required not only for return of the property, but for damages as well. The fact remains, however, that the legislature has not seen fit to require a plaintiff's bond in receiverships. To acknowledge appellants' contention would be to require a plaintiff's bond in all cases and remove the question from the discretion of the trial court. The wisdom of such a rule is for legislative rather than judicial consideration.

Appellants point out that the order appointing the receiver in this case directs appellants to deliver up the herd to the receiver. This, they contend, amounts to an injunction and the statutory requirement of bond as a condition to issuance of an injunction should apply. The duty to deliver, however, results from the appointment

of the receiver and not from independent action or restraint enjoined upon the defendants. It is an essential foundation of the receivership itself. First Union Trust & Savings Bank v. Consumers' Co., 7 Cir., 63 Fed.2d 273. See: State v. District Court, 48 Nev. 198, 228 P. 617. Again, to acknowledge appellants' contention would be to require a plaintiff's bond in all cases. Furthermore it would be tantamount to holding that any court order from which an injunction against interference or disobedience may be implied would be subject to the requirement of injunction bond, whether specifically required by statute or not. Clearly such is not the law. Swift v. Black Panther Oil & Gas Co., 8 Cir., 244 Fed. 20; Phoenix Foundry & Machine Co. v. North River Construction Co., 6 N.Y. Civ.Proc. 106, 33 Hun. 156; See: 32 C.J. 311 (Injunctions, sec. 505).

Appellants contend that this court in Shelton v. District Court, 64 Nev. 487, 185 P.2d 320, has already held in effect that receiverships in every case are subject to injunction bond. We do not so construe the holding of that case. The principal holding was to the effect that the court was without jurisdiction to appoint the receiver through defective notice. In referring to the necessity of injunction bond, we feel that the court was viewing the order in its potential capacity as an injunction independent of the receivership which the court had held invalid.

Appellants' third contention is that the court acted in excess of jurisdiction or abuse of discretion in failing to require the receiver to post bond for faithful performance of his duties. They assert that without such bond there is no security for the return of the property taken from their possession.

Again, the statute contains no requirement of such bond, and its requirement, accordingly, lies within the discretion of the trial court. Johnston v. DeLay, 63 Nev. 1, 158 P.2d 547, 161 P.2d 350; See: 75 C.J.S. 717

(Receivers, sec. 62). Again, we may not invade the legislative field to eliminate that discretionary power. Whether an abuse of discretion results from the court's action depends, then, upon the circumstances of the particular case.

The record shows that in appointing the receiver the court noted that he was "a responsible businessman owning real and personal property in the Town of Fernley, State of Nevada, of substantial value, so that said Receiver qualifies both in respect to financial responsibility as well as integrity." The attention of the court was thus drawn to the very considerations which properly should bear upon the question of necessity for bond, and determinations were made upon them. Accepting those determinations, we cannot say failure to require a receiver's bond was an abuse of discretion.

We are far from unmindful of the harsh nature of this extreme remedy and of the principle which demands that it be used sparingly and only when the securing of ultimate justice appears to require it. These, as the record demonstrates, are propositions which at least twice were presented to the trial court and received the most careful consideration of that tribunal. In the absence of any showing of abuse of discretion we must respect its judgment that, under the circumstances of this most unusual case, the securing of ultimate justice (which, after years of litigation, cannot yet be said to have approached realization), demands the extreme remedy of receivership.

Affirmed with costs.

EATHER, C. J. and BADT, J., concur.

ON PETITION FOR REHEARING, No. 3737
August 3, 1954.

*Per Curiam:*

Rehearing denied.