STELLA B. LEONARD, Formerly Known as STELLA B. LEONARD BELANGER, Now STELLA BRYSON, Appellant, v. MILTON A. BOWLER and MILTON D. BOWLER, Respondents.

No. 3893

June 13, 1956.                    298 P.2d 475.

*Sinai & Sinai,* of Reno, for Appellant.

*Vargas, Dillon & Bartlett* and *Alex A. Garroway,* all of Reno, for Respondents.

## OPINION

By the Court, BADT, J.:

Through pretrial orders, orders rejecting evidence tendered by defendants, and instructions to the jury, the trial judge permitted to go to the jury the single question as to whether plaintiff by her actions was estopped from asserting her title to the cattle involved in this long continued controversy. The jury by its general verdict for defendants found such an estoppel to exist. Plaintiff contends that there is no evidence whatsoever upon which such estoppel can be based. We agree with that contention.

On the fourth occasion in which this controversy reached this court, Bowler v. District Court, 68 Nev. 445, 454, 234 P.2d 593, 598, will be found the history of the case in which we noted even then, in 1951, "the long history of the litigation involving these parties, in the course of which no trial of the issue of ownership has as

yet been had." That issue finally was tried and in Bowler v. Leonard, 70 Nev. 370, 269 P.2d 833, we noted that the case was before the court for the fifth time, and listed the connected cases. In that trial the court determined title to the herd of 41 milch cows and 2 bulls to be in Stella B. Leonard, formerly Stella B. Leonard Belanger, then and now Stella B. Bryson. In the appeal on the merits in that case we were compelled to reverse and remand for a new trial, though affirming the appointment of a receiver. This was because the court erroneously held that Mrs. Bryson's prior judgment in her action against Childers and Vrenon, to which the Bowlers were not parties, was res judicata as against the then defendant Bowlers, the present defendants and respondents. In holding that the Bowlers were entitled to assert their own defense against Mrs. Bryson's claim of ownership, we thus provided them with a shield (whether or not it might prove an effective one) against the judgment she had obtained against Childers and Vrenon. The Bowlers have now apparently persuaded the jury in the trial below that the shield we thus provided might also serve as a sword. In the eyes of the jury, by neglecting to name the Bowlers as parties to the former suit, not only did plaintiff fail to secure a judgment against them—she had acted also in such manner that it was unconscionable for her now to assert a claim of title against them.

In sustaining the propriety of such conclusion on the part of the jury, the contention of the Bowlers is substantially as follows: that when plaintiff failed to bring suit *against them* they assumed that she was not claiming the cattle *as against them* and that so far as she was concerned their title was perfectly good; that in reliance upon this "representation" they proceeded to treat the cattle as their own; that they milked them and disposed of the milk; that they borrowed on them; that they would have acted differently in respect to the herd had they known that plaintiff claimed title to it against

them. Explaining this further, one of respondents testified: "We would have probably seen just how fast we could have got rid of those forty-one cows and two bulls." Respondents emphasize appellant's failure to sue Childers and Vrenon until October, 1949; her failure to make sufficient inquiry as to the position or location of the livestock; her failure to join respondents as defendants in that action; their reliance thereon and their failure to believe that they would ever be held to be accountable; their lack of knowledge that appellant claimed as against them until the cattle were actually seized by the sheriff in the action against Childers and Vrenon, to which they were not parties; her failure to bond against their third party claim on such seizure under execution against Childers and Vrenon; her failure to demand a hearing to determine title under the said levy of execution; the successful application made by them for a writ of mandamus compelling the sheriff to return the cows to them; and their asserted reasonable reactions to all of this—namely, that they believed that she acquiesced in their claim of title, that they were entitled thus to rely, that they acted upon such reliance and that plaintiff was accordingly estopped to assert her title as against them.

We are satisfied from a study of the record that one or more of the requisites of equitable estoppel are entirely lacking. That the respondents suffered any detriment whatsoever by reason of their claimed reliance upon the actions of appellant is in itself extremely doubtful. That they relied at all upon such actions is without support in the record. They knew in November, 1948 that appellant was suing Childers and Vrenon for the recovery of the cattle, claiming them to be hers. It is true, as we held in the last appeal, Bowler v. Leonard, 70 Nev. 370, 381, 269 P.2d 833, 838, that they were under no requirement to intervene to protect their title, in a suit to which they were strangers, but might rest assured that a judgment in such action, to which they were not summoned to appear, would not affect their legal rights. They were, however, not entitled to assume

that appellant's claim of ownership of these particular cattle excluded respondents from its scope. Their refraining from intervening in the prior suit, their refraining from advising themselves as to the nature of that action, while not necessarily resulting in any loss of their rights, certainly created no new rights in them. Their knowledge of plaintiff's action against Childers and Vrenon for recovery of the particular livestock in question was knowledge that she asserted a general claim of ownership. Their claim that they were misled, that they were thus the victims of misrepresentation on plaintiff's part and that plaintiff is thus estopped to assert her claim of ownership as against them thus fails in its entirety and there is no escape from our duty to remand for a new trial.

This would in ordinary circumstances dispose of the appeal and our order remanding would be limited to the issue of damages. This would ordinarily follow from our holding that the defense of estoppel against the plaintiff's assertion of ownership was wholly without factual support. A further problem faces us, however.

Defendants contended below that plaintiff's own title had passed to Childers, from Childers to Vrenon and from Vrenon to defendants through her husband Belanger as her authorized agent, or through an act of Belanger's which she subsequently ratified. The trial court struck this defense. It ruled that since the divorce decree awarded title to the herd to plaintiff as against her husband Belanger and since defendants claimed through Belanger, plaintiff's title as against the defendants had been established as of the date of the divorce decree. In the former appeal, however, we recognized that the defendants' claim of title was not limited to the acquisition of Belanger's title but included the claim that they acquired title from plaintiff herself. We said in our former opinion: "Childers, Vrenon and appellants all contend that, even accepting such ownership [by Mrs. Leonard] [she], by her conduct either authorized

Belanger's sale to Childers, or ratified it, or is estopped to deny such authority." Bowler v. Leonard, 70 Nev. 370, 378, 269 P.2d 833, 837. It is clear that the trial court was in error in striking the defense that plaintiff's own title had passed first to Childers, then to Vrenon, and then to defendants, by reason of actions by her agent Belanger, either as previously authorized by her, or as subsequently ratified by her. Such issue has never been determined, and respondents contend that such failure of determination resulting from such error, redounds to their prejudice. To this end they have made cross assignments of error.

Such cross assignments of error are, however, not in support of a cross appeal. Indeed it is difficult to envisage a cross appeal by respondents. The verdict of the jury was that the plaintiff take nothing, and the defendants were clearly not aggrieved by the judgment entered on that verdict. Plaintiff contends that this court may not consider cross assignments of error asserted by respondents under the circumstances and relies upon Dennis v. Caughlin, 22 Nev. 447, 41 P. 768, 29 L.R.A. 731, and three prior decisions of this court therein cited. The cited case does indeed state such to be the rule. That was an appeal in an election contest in which the lower court's acceptance or rejection of ballots was reviewed. This court held that the rejection of fifteen individual ballots was erroneous and remanded the case for a new trial. Though it refused to examine ballots which the respondent, in his cross assignment of errors, asserted to have been erroneously rejected, the court spelled out the rules which would guide the court in the second trial. In Nesbitt v. Chisholm, 16 Nev. 39, the successful plaintiff in an action to set aside a deed asserted error because the decree purported to convey certain interests to persons who were not parties to the action. While the court refused to do this, it actually passed on the assignment of error by declaring that the portion of the decree adjudging that stated interests were vested in those persons was

a nullity. The judgment was affirmed as to the parties. In Moresi v. Swift, 15 Nev. 215, this court again said, with reference to certain errors asserted by the respondent: "We are only called upon to examine errors assigned by appellant." Nevertheless, the court did discuss some of such assigned errors and finally said: "Enough has been said already to indicate the rights of the parties at another trial." The dissenting opinion likewise passed upon respondent's assignments of error, both with respect to rulings on evidence and instructions to the jury. This opinion held that evidence offered by respondent "was erroneously excluded by the court"—respondents' precise assignment in this appeal. In Maher v. Swift, 14 Nev. 324, this court for the first time referred to the rule that it was "only called upon to dispose of such questions as are assigned as error by the appellant * * * not * * * the errors, if any, that may have been committed against the respondent." Three early California cases were cited. In this instance too, however, the court indicated its view upon the respondents' assignment of error. Those are the four cases in which this court treated of the question, the last holding, in the Dennis case, having been 61 years ago. In each case the court paid lip service to the rule but in each case, to a greater or less extent, the court actually indicated its views on the respondents' assignments of error. From the discussion of the subject appearing at 5 C.J.S. 168, Appeal and Error, Sec. 1498, it appears that the rule varies in the different jurisdictions and under varying circumstances. In our judgment the foregoing history of the consideration of the rule in this state and of the action taken by this court in the cases in which the rule was considered leads to the conclusion that this court may, in a proper case and in the exercise of its discretion, consider cross assignments of error made by the respondent.

Our consideration of the cross assignments in the present appeal is necessary at least to a determination of the scope of our remand, as noted earlier in this

opinion. Further, considering the history of this litigation, we feel wholly justified in correcting error which would unquestionably be brought back to us after a second new trial and result inevitably in a remand for a third new trial.

Reversed and remanded for new trial. The costs of this appeal shall be equally shared by the parties.

MERRILL, C. J., and EATHER, J., concur.