PERI–GIL CORP., WILLIAM C. EPPERSON, WILBUR H. SPRINKEL, AND DONA L. EPPERSON, APPELLANTS, *v.* GILBERT SUTTON, RESPONDENT.

No. 5460

June 13, 1968                    442 P.2d 35

*Stewart & Horton,* and *Richard A. Sheffield, Wilbur H. Sprinkel,* and *David R. Hoy,* of Reno, for Appellants.

*Cooke & Roberts,* of Reno, for Respondent.

## OPINION

By the Court, BATJER, J.:

In 1961, the respondent, Gilbert Sutton, by means of his corporation, Industrial Sites, Inc., obtained a lease at the rate

of $200 per month from the Southern Pacific Railroad Company, on a strip of property twenty-five feet wide and one hundred and five feet in length located on the northwest corner of West Commercial Row and North Virginia Streets in Reno, Nevada.

On June 10, 1963, after Sutton had partially developed the property, he entered into a written agreement with Peter Jack Perinati in order to finish development of the property for gambling purposes. In furtherance of the terms of this agreement, on June 21, 1963, certain nominal parties filed the articles of incorporation for Peri-Gil Corp. Sutton and Perinati each owned one-half of the 75,000 shares of stock that were issued. A loan of $40,000 was obtained from the Security National Bank to use in further developing Peri-Gil's property. To secure the loan, Perinati gave his promissory note to the bank and Sutton guaranteed repayment while pledging his stock in Peri-Gil as security, and relinquishing his voting rights in the stock until the note was repaid. Then the lease between Sutton and Southern Pacific was cancelled and a new one was executed between Peri-Gil and Southern Pacific.

On June 28, 1963, Peri-Gil leased the property to Perinati at the monthly rental of $1,000 for the first 18 months, with an acceleration at that time to $2,000 per month.

The property was zoned by the city of Reno to be included within the "red line area" allowing unlimited gambling on the property. Thereafter, Perinati obtained a gambling license.

On December 24, 1963, Peter Jack Perinati died, and Ronald B. Darney who had been the accountant for Perinati and Peri-Gil became the administrator of Perinati's estate.

On November 4, 1964, the 37,500 shares of Peri-Gil stock in the Perinati estate were sold to William C. Epperson pursuant to court order entered in conformity with NRS Chapter 148. Later that same day, without notice to Sutton, a meeting of the board of directors of Peri-Gil was held, at which William C. Epperson was elected president; Thomas C. Nolan, an employee of the law firm of Stewart & Horton, attorneys for Peri-Gil, was elected vice-president, and Dona L. Epperson, William Epperson's wife, was elected secretary-treasurer. The lease between Peri-Gil and Perinati was cancelled and a new lease was executed between Peri-Gil and William C. Epperson. This new lease provided for a current rental of $1,000 per month, but with no provision for an increase to $2,000 per month, although the cancelled lease would have accelerated to that level the following month.

On February 1, 1965, again without notice to Sutton, Epperson, as the sole stockholder with voting rights in Peri-Gil, approved the amendment of the articles of incorporation, increasing the amount of authorized capital stock from 75,000 to 75,100 shares. On February 8, 1965, without first offering a pro-rata share of the new stock to Sutton, Epperson bought all of the 100 new shares.

On April 1, 1965, Epperson subleased the property to Whistle Stop, Inc., a corporation owned and operated by him and his wife, at a monthly rental of $1,400, with the provision that the rate would be increased if the rental paid by Peri-Gil to Southern Pacific was increased.

On August 15, 1965, the debt owed to Security National Bank by Peri-Gil became delinquent and the bank began foreclosure procedures.

On August 19, 1965, a meeting of the board of directors of Peri-Gil was held, without notice to Sutton, and the amount of the capital stock of the corporation was increased from 75,100 shares to 100,000 shares. Later, 1,000 of these new shares were offered for sale, and 500 shares each were purchased by Epperson and Sutton.

Also on August 19, 1965, Thomas C. Nolan submitted his resignation as a director of Peri-Gil, and Wilbur H. Sprinkel, who was an attorney in the firm of Stewart & Horton, was appointed in his place.

Late in 1965, Whistle Stop, Inc., subleased the westerly 70 feet of the property to the Reno Turf Club at a rental of $1,200 per month. The easterly 35 feet of the property was retained and used as the location for Dona's (Epperson) Snack Bar, from which the Epperson's drew a salary of approximately $1,000 per month.

Later, Whistle Stop was dissolved and the rent from the Reno Turf Club, which had by then increased to $1,300 per month, was paid directly to Epperson.

On April 4, 1966, Joy Perinati, the widow of Peter Perinati, purchased Peri-Gil's $40,000 promissory note from the Security National Bank. At that time the monthly payments on the note were reduced from $600 to $450 per month.

The respondent, Sutton, filed this action for the appointment of a receiver on April 11, 1967. After a hearing, the Second Judicial District Court entered an order appointing Harry Lemon as the receiver of Peri-Gil. The appellants appeal from that order.

Two specifications of error are listed in this appeal. First,

that it was error to appoint a receiver, and second, that if a receiver had to be appointed, that receiver should have been Wilbur H. Sprinkel, who was a non-negligent director of Peri-Gil.

Although most of the facts alleged, and relied upon, by the respondent would not support the appointing of a receiver, it is inescapable that Peri-Gil wilfully violated its charter and the provisions of NRS 78.265,[1] when its board of directors amended the articles of incorporation to issue 100 additional shares of stock which were sold to Epperson giving him control of the corporation, without offering an opportunity to Sutton to purchase a pro rata share of new stock. Peri-Gil attempts to justify the action of its board of directors by contending that article XII[2] of its articles of incorporation negates the requirements of NRS 78.265.

Peri-Gil's interpretation is erroneous. While article XII of Peri-Gil's articles of incorporation negates the provisions of NRS 78.265, in regards to non-stockholders, it does not alter the requirement that every stockholder has the right to purchase his pro rata share of new stock at the price for which it is offered to other stockholders. The fact that Sutton was a non-voting stockholder at the time the board of directors approved Peri-Gil's amended articles of incorporation does not in any way diminish his rights under NRS 78.265, and the original charter of the corporation.

This infraction alone brings Peri-Gil within NRS 78.650(1), and the lower court did not abuse its discretion when it entered the order appointing a receiver.

Under NRS 78.650(1), a receiver for a corporation may be appointed upon application of a stockholder, "* * * whenever (a) The corporation has willfully violated its charter;

---

[1]NRS 78.265. "Unless otherwise provided in the certificate of incorporation or an amendment thereof, every stockholder of a corporation shall, upon the sale for cash of any new stock of such corporation of the same class as that which he already holds, have the right to purchase his pro rata share of such stock at the price at which it is offered to others, which price, in the case of stock having par value may be in excess of par if the board of directors shall so determine."

[2]"No stockholder in this corporation shall have a preference over anyone not a stockholder to purchase any new stock in this corporation sold for cash, unless the Board of Directors, by a majority vote before the sale of said stock, shall deem it expedient that the stockholders have such preference."

or (b) Its trustees or directors have been guilty of fraud or collusion or gross mismanagement in the conduct or control of its affairs; or (c) Its trustees or directors have been guilty of misfeasance, malfeasance or nonfeasance; or (d) The corporation shall be unable to conduct the business or conserve its assets by reason of the act, neglect or refusal to function of any of the directors or trustees or (e) The assets of the corporation are in danger of waste, sacrifice or loss through attachment, foreclosure, litigation or otherwise * * *."

In the case of Bowler v. Leonard, 70 Nev. 370, 269 P.2d 833 (1954), this court quoting from High on Receivers held: "* * * since the appointment of a receiver is thus a discretionary measure, the action of the lower court * * * will not be disturbed upon appeal unless there has been a clear abuse." Accord, Johnston v. Delay, 63 Nev. 1, 158 P.2d 547 (1945); 16 Fletcher Cyclopedia Corporations § 7697, at 103.

We now consider the second assignment of error.

NRS 78.650(4) provides: "The Court may, if good cause exists therefor, appoint one or more receivers for such purpose, but in all cases directors or trustees who have been guilty of no negligence nor active breach of duty shall have the right to be preferred in making the appointment."

The statute does not categorically provide that a non-negligent director shall have the right to be appointed, but only that he, "shall have the right to be preferred in making the appointment." The second phase imports a lesser right than does the first. By the terms of the statute a non-negligent director is entitled to preferential consideration. However, after having been considered, such director can be rejected by the court if there appears reason to do so.

The appellants rely on Shelton v. Second Judicial District Court, 64 Nev. 487, 185 P.2d 320 (1947), as authority for the appointment of Sprinkel as receiver. That case is readily distinguishable from the one at hand. First, Sprinkel was an attorney-employee in the law firm which had been retained by the appellants to contest the appointment of a receiver. Second, the preferred directors in the *Shelton* case were majority stockholders in that corporation, whereas Sprinkel held no stock in Peri-Gil.

Aside from those factual distinctions the court in *Shelton* did not hold that the petitioners therein had a vested right to be the receivers of their corporation but only that they had the right to be heard as to their qualifications.

Returning to the fact that Sprinkel was an attorney in the law firm representing Peri-Gil, "* * * the general rule is that unless all interested parties consent thereto, the attorney of a party, actively engaged in securing or opposing a receivership for a corporation, should not be named as receiver in a cause." 16 Fletcher, Cyclopedia Corporations § 7734, at 218. There exists good reason for denying Sprinkel the appointment as receiver for Peri-Gil.

The order of the lower court is, in all respects, affirmed.

THOMPSON, C. J., COLLINS, ZENOFF, and MOWBRAY, JJ., concur.