OPINION

Per Curiam:

Respondents (“Nevada shareholders”) filed suit in district court seeking the appointment of a receiver for appellant Medical Device Alliance, Inc. (“MDA”). After finding strong evidence of serious corporate mismanagement and fraud, the district court appointed a temporary receiver for MDA. Subsequently, appellant Donald K. McGhan (“McGhan”) successfully intervened and filed a motion to terminate the receivership, which the district court denied. MDA and McGhan both appealed, and their appeals have been consolidated.
For the reasons discussed herein, we conclude that the Nevada shareholders met the statutory requirement under NRS 78.650 prescribing that at least ten percent of MDA’s shareholders apply for the appointment of a temporary receiver. We also conclude that the district court did not abuse its discretion by appointing a temporary receiver for MDA or by denying McGhan’s subsequent motion to terminate the receivership.

FACTS

In September 1995, McGhan founded MDA, which incorporated in Nevada. MDA sought to develop, manufacture, and market medical devices that were used to remove body fat. As part of this effort, MDA entered into an exclusive, worldwide licensing agreement with Misonix, Inc. to market and sell Misonix’s patented ultrasound liposuction device, which liquefies body fat and then suctions it out of the body.
In 1997, over 270 private investors, which included the Nevada shareholders, invested approximately $14,313,750.00 in MDA through private placements. MDA sought to use these funds “to finance further research, development and testing of [MDA’s] products, to fund costs associated with commercial development, production and marketing of [MDA’s] products, to acquire other related technologies and targeted companies and as working capital.” McGhan, members of his family, and companies owned and controlled by McGhan now hold approximately twenty-four percent of the shares in MDA.
*857 After allegations of fraud and mismanagement arose and after unsuccessfully pursuing the appointment of a receiver for MDA in California,[1] the Nevada shareholders filed suit in district court on March 19, 1999, seeking the appointment of a receiver under NRS 78.650.[2] The suit named only MDA as a defendant and did not name McGhan or the other directors of MDA as defendants.
The Nevada shareholders subsequently filed a motion seeking the appointment of a temporary receiver for MDA. Specifically, the Nevada shareholders’ suit and motion alleged that McGhan and the other directors of MDA were guilty of fraud, gross mismanagement, and self-dealing in conducting MDA’s corporate affairs. The suit and motion also alleged that McGhan and the directors were guilty of misfeasance, malfeasance, or nonfeasance and that MDA’s assets were being wasted. In order to protect MDA’s current and future assets, the Nevada shareholders sought the appointment of a temporary receiver.
The Nevada suit was initiated at the request of a California attorney, Kathryn Tschopik (“Tschopik”), who had earlier pursued the appointment of a receiver for MDA in California. Tschopik associated with the Nevada firm of James, Driggs, Walch, Santoro, Kearney, Johnson & Thompson (“James Driggs”) to represent the Nevada shareholders, some of whom had previously attempted to intervene in the California suit. Acting as the agent for the Nevada shareholders, Tschopik authorized James Driggs to file the Nevada suit. Tschopik later successfully associated into the Nevada suit as co-counsel for the Nevada shareholders under Nevada Supreme Court Rule 42.
Five days before the scheduled hearing on their motion to appoint a temporary receiver, the Nevada shareholders filed a motion for leave to file an amended complaint, along with an ex parte motion to shorten the time to hear the motion. The Nevada shareholders sought to amend their complaint to add seven additional MDA shareholders as plaintiffs, to rename three current shareholders in order to reflect their proper capacity as trustees instead of individuals, and to substitute a partnership in place of a current individual shareholder since the partnership held the shares.
*858 The Nevada shareholders filed their motion in response to MDA’s argument that the Nevada shareholders lacked the requisite number of shareholders necessary to seek a receiver. The Nevada shareholders argued that if the district court permitted them to file the amended complaint, they would have the requisite number of shareholders needed to seek the appointment of a receiver under NRS 78.650 based on the number of outstanding shares claimed by MDA. Because the motion to amend the complaint would resolve the jurisdictional issue of whether the Nevada shareholders had the necessary number of shareholders as required by NRS 78.650, the district court granted the Nevada shareholders’ ex parte motion to shorten time to hear the motion and set arguments for June 28, 1999, which was the same date for arguments on the motion to appoint the temporary receiver.
On June 28, 1999, the district court heard arguments concerning the Nevada shareholders’ motion to amend their complaint and their motion to appoint a temporary receiver. After reviewing the evidence and hearing the parties’ arguments, the district court made a finding on the date of the hearing and subsequently issued an order dated June 30, 1999, wherein it granted the Nevada shareholders’ motion to amend their complaint. The district court concluded that “[t]he court, after granting leave to amend the complaint, finds that it has jurisdiction to appoint a receiver over [MDA].” The district court then went on to grant the Nevada shareholders’ motion to appoint a temporary receiver.
Specifically, the district court found “that it should appoint a receiver in accordance with NRS [78.650(l)(b)], since it finds that the trustees or directors of [MDA] have been guilty of fraud or collusion or gross management [sic] in the conduct or control of its affairs.” The district court also found “that the trustees or directors have been guilty of misfeasance, malfeasance or nonfeasance” under NRS 78.650(l)(c). Further, the district court found “that it should appoint a receiver in accordance with NRS [78.650(l)(e)], since it finds that the assets of [MDA] are in danger of waste, sacrifice or loss through attachment, foreclosure, litigation or otherwise.”
On August 23, 1999, McGhan filed a motion to intervene and a motion to terminate the receivership. In support of his motion, McGhan submitted a proposed plan of action to the district court. McGhan argued that if the district court accepted the proposed plan, the plan would obviate the need for a continuation of the receivership.
Meanwhile, on August 27, 1999, the receiver filed his first report with the district court. The receiver’s report confirmed most, if not all, of the Nevada shareholders’ allegations of waste, *859 fraud, and gross mismanagement committed by McGhan and the other directors.
After reviewing the evidence and hearing the parties’ arguments on September 7, 1999, the district court granted McGhan’s motion to intervene, but denied his motion to terminate the receivership because the district court found that there was insufficient cause to terminate the receivership at that time. MDA and McGhan now appeal the district court’s order appointing the temporary receiver and the order denying the motion to terminate the receivership.

DISCUSSION

The primary issue presented by these appeals is whether the Nevada shareholders met the statutory requirement under NRS 78.650 prescribing that at least ten percent of MDA’s shareholders apply for the appointment of a receiver. MDA and McGhan argue that the district court lacked jurisdiction to appoint a temporary receiver because the Nevada shareholders failed to satisfy the ten percent requirement under NRS 78.650. We disagree and conclude that the Nevada shareholders complied with NRS 78.650 once the district court granted their motion to amend the complaint.
Nevada law mandates that “[a]ny holder or holders of one-tenth of the issued and outstanding stock may apply to the district court” for an order appointing a receiver. NRS 78.650(1). “The district court does not have jurisdiction to appoint a corporate receiver, unless the applicant holder or holders of one-tenth of the issued and outstanding stock has legal title at the time the court considers the application.” Searchlight Dev., Inc. v. Martello, 84 Nev. 102, 109, 437 P.2d 86, 90 (1968). Accordingly, “‘the moment when the court is determining whether or not a temporary receiver should be appointed ... is the controlling time’ ” for determining whether the shareholders hold the requisite ten percent stock under NRS 78.650(1). Id. (quoting Hill v. Vaill, 176 A.2d 881, 883 (Conn. Super. Ct. 1961)).
In the present case, the controlling time for determining whether the Nevada shareholders satisfied the ten percent requirement under NRS 78.650 was at the June 28, 1999, hearing where the district court considered appointing the temporary receiver for MDA. At the hearing, MDA essentially argued that once the district court subtracted the shares held by the improperly named shareholders, the four uninterested shareholders who did not desire the appointment of a receiver, and the one shareholder who sold his stock from the number of shares claimed by the Nevada *860 shareholders, the Nevada shareholders did not then hold the requisite ten percent of MDA’s shares.[3] However, MDA’s contention is undermined by the affidavit of Charles E. Barrantes (“Barrantes”), the executive vice president, chief financial officer, and secretary of MDA.
In his June 2, 1999, affidavit, Barrantes stated that MDA had 10,879,239 outstanding shares. Importantly, Barrantes conceded in his affidavit that if the improperly named shareholders in the original complaint were included in their proper capacities, the Nevada shareholders would have 1,020,750 shares, or 9.38 percent of MDA’s outstanding stock. Consequently, even accepting MDA’s argument that the 5,000 shares of MDA stock that were sold and the 15,000 shares of MDA stock held by the four uninterested shareholders should have been subtracted from the 1,020,750 shares held by the Nevada shareholders, the Nevada shareholders were still left with 1,000,750 shares.
When the district court granted the Nevada shareholders’ motion to amend their complaint, seven additional MDA shareholders collectively holding an additional 110,000 shares of MDA stock were added as plaintiffs. Therefore, at the time of the June 28, 1999, hearing, the Nevada shareholders held 1,110,750 shares of MDA stock, which reflected 10.21 percent of MDA’s outstanding stock. Accordingly, we conclude that the Nevada shareholders satisfied the statutory requirements of NRS 78.650 and that the district court had jurisdiction to appoint a temporary receiver.[4]
Our conclusion that the district court had jurisdiction to appoint a temporary receiver is somewhat complicated by the facts surrounding the filing of the Nevada shareholders’ amended complaint. Following the district court’s granting of the Nevada share *861 holders’ motion to amend their complaint, the Nevada shareholders filed their amended complaint on July 6, 1999. Unfortunately, due to a clerical error by James Driggs, the Nevada shareholders actually re-filed the original complaint instead of the amended complaint.
Eventually, the error was discovered, and on October 1, 1999, the Nevada shareholders filed a second motion for leave to file a second amended complaint. In the second motion, the Nevada shareholders sought to correct the earlier problems and also sought to add even more MDA shareholders, as well as name the remaining directors of MDA as defendants. On December 10, 1999, the district court granted the Nevada shareholders’ second motion to amend their complaint and permitted the Nevada shareholders to correct the earlier problems and name the remaining directors of MDA, but did not permit the additional MDA shareholders, first mentioned in the second motion to amend, to join in the suit. On January 4, 2000, the Nevada shareholders filed their second amended complaint.
As a result, the additional plaintiffs who held the 110,000 shares of MDA stock that gave the Nevada shareholders the requisite ten percent of stock under NRS 78.650 did not definitively become plaintiffs until the second amended complaint was filed on January 4, 2000. Although the Nevada shareholders erred by filing the incorrect version of their amended complaint, this error in no way undermines the fact that the Nevada shareholders represented more than ten percent of MDA’s shareholders at the time of the June 28, 1999, hearing.
Accordingly, we conclude that the district court had jurisdiction to appoint the temporary receiver based on its June 30, 1999, order granting the Nevada shareholders’ first motion to amend their complaint. We also conclude that under the circumstances, the filing of the Nevada shareholders’ second amended complaint on January 4, 2000, relates back to the filing of the Nevada shareholders’ first amended complaint on July 6, 1999, because the Nevada shareholders sought leave to file the second amended complaint in order to comply with the June 30, 1999, order of the district court.[5]
*862 Moreover, although MDA and McGhan do not specifically argue that the district court abused its discretion by granting the Nevada shareholders’ motions to amend their complaint, we conclude that the district court acted within its discretion by granting the Nevada shareholders’ motions to amend their complaint.[6] See Connell v. Carl’s Air Conditioning, 97 Nev. 436, 439, 634 P.2d 673, 675 (1981) (holding that a motion to amend a complaint is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent a showing of abuse of discretion).
MDA and McGhan next argue that the district court abused its discretion by appointing a temporary receiver for MDA. Specifically, MDA and McGhan contend that the district court abused its discretion because: (1) an injunction imposed on MDA by the California court provided the district court an alternative remedy sufficient to preserve the status quo; (2) the California court’s decision not to appoint a receiver should have been given effect by the district court under the principle of comity; (3) the district court’s order in effect imposed a permanent receiver on MDA with overly broad powers; (4) MDA’s directors were denied due process by not being named as parties and by not being provided notice; and (5) MDA’s directors are preferred as a receiver under NRS 78.650.
“The appointment of a receiver is an action within the trial court’s sound discretion and will not be disturbed absent a clear abuse.” Nishon’s Inc. v. Kendigian, 91 Nev. 504, 505, 538 P.2d 580, 581 (1975); see also Peri-Gil Corp. v. Sutton, 84 Nev. 406, 411, 442 P.2d 35, 37 (1968); Bowler v. Leonard, 70 Nev. 370, 383, 269 P.2d 833, 839 (1954). Under NRS 78.650(1), the district court may appoint a temporary receiver in a number of instances, including, but not limited to, situations where corporate directors are guilty of fraud or gross mismanagement or where the assets of the corporation are in danger of waste. Having carefully reviewed and considered the parties’ contentions and the *863 entire record on appeal, we conclude that the district court acted well within its discretion in appointing a temporary receiver for MDA.[7]
Lastly, McGhan asserts that the district court abused its discretion by denying his motion to terminate the receivership. NRS 78.650(4) provides that the district court “may at any time for sufficient cause make a decree terminating the receivership.” Consequently, the decision to terminate a receivership rests in the sound discretion of the district court under the plain language of NRS 78.650(4). We again conclude that the district court acted within its discretion in denying McGhan’s motion to terminate the receivership.

CONCLUSION

Accordingly, we conclude that the district court properly granted the Nevada shareholders’ first motion to amend their complaint, properly determined that the Nevada shareholders satisfied the statutory requirements of NRS 78.650, and had jurisdiction to appoint the temporary receiver for MDA. We also conclude that the district court did not abuse its discretion by appointing a temporary receiver or by denying McGhan’s motion to terminate the receivership. Having reviewed MDA and McGhan’s remaining contentions on appeal and finding them to be without merit, we affirm the order of the district court appointing a temporary receiver and the order denying the subsequent motion to terminate the receivership.

Although the California court did impose an injunction on MDA to prevent the diversion of its corporate assets, the California court denied a request to appoint a receiver for MDA. It appears from the record on appeal that the California court’s decision was based, at least in part, on MDA’s argument that Nevada had exclusive jurisdiction over the appointment of a receiver.

Initially, the Nevada shareholders sought an accounting of MDA’s transactions and financial activities. However, the Nevada shareholders voluntarily dismissed the accounting claim at a hearing in the district court on June 28, 1999.

MDA and McGhan also contend that during depositions taken in the prior California case, eight MDA shareholders who are named in the Nevada suit indicated that they had no knowledge of the Nevada suit and did not seek the appointment of a receiver. However, after a careful review of the depositions, it is clear that the shareholders authorized a suit against MDA, but did not draw a distinction between the proceedings in California and Nevada. Even assuming that the eight deponents did not authorize the Nevada suit, MDA and McGhan did not present this evidence to the district court until November 30, 1999. Thus, the district court did not have this evidence before it at the June 28, 1999, hearing, which was the controlling time for determining whether the Nevada shareholders satisfied NRS 78.650. Accordingly, we conclude that the depositions of the eight shareholders do not apply to the issue of whether the district court had jurisdiction on June 28, 1999, to appoint a temporary receiver under NRS 78.650.

We note that if the Nevada shareholders eventually seek the appointment of a permanent receiver and this case proceeds to trial, the district court must again determine at that time whether the Nevada shareholders hold the requisite ten percent of MDA’s stock. See NRS 78.650; Searchlight Dev., Inc., 84 Nev. at 108-09, 437 P.2d at 90.

Our conclusion that the Nevada shareholders’ second amended complaint relates back to the filing of the Nevada shareholders’ first amended complaint should not be confused with NRCP 15(c) and the relating back of amendments to the original pleading. NRCP 15(c) involves whether claims or defenses asserted in an amended pleading relate back to the date of the original pleading. See NRCP 15(c). Because this case does not involve claims and defenses, we conclude that NRCP 15(c) is inapplicable to this case. See Nurenberger Hercules-Werke v. Virostek, 107 Nev. 873, 882, 822 P.2d 1100, 1106 (1991) (concluding that NRCP 15(c) does not apply when adding or *862 substituting parties because NRCP 15(c), by its terms, applies only to claims or defenses).

The parties dispute the applicability of Transcontinental Oil Company v. Free, 80 Nev. 207, 391 P.2d 317 (1964), to this case. We conclude that Transcontinental Oil is inapplicable because it does not touch on the precise issue before this court. In Transcontinental Oil, the issue was whether the district court had jurisdiction to set a hearing date on the plaintiff’s motion to appoint a receiver. See id. at 207-10, 391 P.2d at 317-19. Here, the issue is whether the district court had jurisdiction to grant the Nevada shareholders’ first motion to amend their complaint in order to ensure jurisdiction over this case.

Without citing any legal authority, MDA and McGhan also contend that the district court appointed a temporary receiver and denied McGhan’s subsequent motion to terminate the receivership without holding an evidentiary hearing and permitting witnesses to testify. We decline to consider this argument because MDA and McGhan fail to cite any legal authority in support of their position. See SIIS v. Buckley, 100 Nev. 376, 382, 682 P.2d 1387, 1390 (1984) (declining to consider “conclusory arguments, lacking substantive citation to relevant authority, and failing to address the pivotal issues in the case”). Moreover, we emphasize that the district court has only appointed a temporary receiver for MDA. If this case proceeds to trial, the district court should admit evidence and testimony in order to determine whether a permanent receiver should be appointed to run MDA’s corporate affairs.